STEPHENSON *v.* DOE, on the Demise of WAIT and Others.

A copy of the record of a patent for *United States'* land (such copy being certified by the commissioner of the general land office under the seal of his office) is admissible evidence, if the absence of the original be sufficiently accounted for.

*Semble,* that such copy is admissible evidence without accounting for the absence of the original, if the party offering the copy in evidence be not the patentee.

The facts necessary to show that evidence previously given was admissible, may be proved at any time during the trial.

A man resident in the state of *New York* died there leaving a will; but there was no evidence as to the contents of the will or how it was executed. *Held,* that, under those circumstances, a jury might find that the land of the deceased in this state, if he had any, descended to his legitimate children as his heirs.

An act prescribing the boundaries of a county is a public act.

A judgment was rendered by the Circuit Court of *Sullivan* county in favour of the plaintiff for a certain sum of money. An execution was afterwards issued on the judgment, directed to the sheriff of said county, commanding him that of the goods and lands in his bailiwick of the judgment-debtor he should make the amount of the judgment. The sheriff levied said execution on the debtor's

land in *Vigo* county, and sold the same by virtue of the execution. *Held*, that such levy and sale were void.

A writ of foreign attachment was issued under the act of 1807, and, during the pendency of the suit, the act was repealed. There was no clause in the repealing act providing for pending suits. · *Held*, that the attachment suit was at an end upon the taking effect of the repealing act, and that the proceedings in the suit subsequent to such repeal were *coram non judice* and void.

Facts stated which were held insufficient to show an adverse possession of land.

A small improvement made by a person on one of two quarter sections of land which were distant from each other a half a mile, is no authority for such person's setting up an adverse possession of the other quarter section, though both were conveyed to him by the same deed.

The words "beyond the seas" in the statute of limitations of 1831 meant, previously to the act of 1843 on the subject, beyond the limits of the state ; and the last-named act did not, as to suits pending at the time of its passage, affect the meaning of said words in the statute of 1831.

A party has a right to the decision of the Court, as to the meaning of a statute applicable to his case, independently of a declaratory act on the subject passed whilst the suit was pending.

Nov. Term,
1847.

STEPHENSON
v.
DOE.

ERROR to the *Vigo* Circuit Court.

*Tuesday,*
*November* 30.

BLACKFORD, J.—This was an action of ejectment for a tract of land in *Vigo* county, described as the west half of the north-east quarter of section thirteen, township thirteen north, range nine west. The suit was brought on the several demises of *Stephen Pelton* and others, and on the joint demise of *Ray G. Wait* and *Phebe* his wife, *Ann Remer, Lawrence T. Remer, Mary Remer, Jane Remer, William T. Remer,* and *Sarah Remer.* The declaration was filed on the 23d of *February,* 1842, and was served on the defendant, *Stephenson,* on the 15th of *March,* 1842. The defendant pleaded not guilty. Verdict for the plaintiff on the second count (on the joint demise). Motion for a new trial overruled, and judgment on the verdict.

On the trial, the plaintiff offered in evidence a copy of the record of a patent; the copy being certified by the commissioner of the general land office under the seal of his office. The patent was from the *United States* to *Stephen Pelton,* dated the 26th of *October,* 1816, for two tracts of land, viz., the north-east quarter of section thirteen, township thirteen north, range nine west, and the north-east quarter of section seven, township thirteen north, range eight west, in the district of *Vincennes.* The copy was objected to as evidence, on the ground that the absence of the original was not accounted for; but the objection was overruled.

Nov. Term,
1847.

STEPHENSON
v.
DOE.

The plaintiff gave in evidence a conveyance from *Pelton*, the patentee, and his wife, to *John Teeple* and *Aaron Remer*, dated the 4th of *December*, 1816, for the tracts of land described in the patent.

He, also, gave in evidence a conveyance from *John Teeple* to *Aaron Remer*, dated the 18th of *July*, 1821, for the same tracts of land.

He proved that his joint lessors (except *R. G. Wait*), were the children of *Aaron Remer* and his wife, and that said *Aaron Remer* died in *January*, 1841. The witness stated that he was one of the executors of the will of *Aaron Remer*, deceased, and that immediately after said *Remer's* death, he, the witness, came into the possession of the papers of the deceased, and had had possession of them ever since; that there had not been found among said papers a patent from the *United States* to *Stephen Pelton* for land in *Indiana*. The witness further stated that, at the instance of the lessors of the plaintiff, he had made diligent search among the papers of said deceased for said patent, but that he had not been able to find it, or to discover any evidence that the same had ever been in the possession of the deceased.

The plaintiff also proved that said *John Teeple*, and *Aaron Remer* and his heirs, were residents of the state of *New York*, and had continued to reside in that state ever since previously to the year 1816.

He also proved, that the laws of *Indiana* of 1818 were published in *July* of that year.

The plaintiff here rested his cause.

The defendant offered in evidence a transcript of the record of a suit in foreign attachment of the *Sullivan* Circuit Court; in which suit *Eliakim Crosby* was plaintiff, and *Stephen Pelton*, the said patentee, was defendant. This transcript showed that to the writ of attachment, which issued in *May*, 1817, the sheriff returned that he had attached the north-east quarter of section thirteen, township thirteen north, range nine west, and the north-east quarter of section seven, township thirteen north, range eight west, situate in *Sullivan* county. The transcript also showed that the judgment in said attachment suit was rendered at the *October* term, 1818, which judgment is as follows: "It is considered by the Court that

the plaintiff recover of the defendant the sum of 960 dollars damages, together with his costs and charges in and about his suit in this behalf expended, and the defendant in mercy, &c." The transcript further showed, that on the 26th of *October*, 1818, a *fieri facias* issued on this judgment to the sheriff of *Sullivan* county, commanding him that of the goods and lands in his bailiwick of said *Pelton*, to make the amount of the judgment; and that to this execution the sheriff returned, that he had levied it on the lands described in said patent, and had sold the same to *Daniel W. Douglass* for 300 dollars. The plaintiff objected to this transcript as evidence, and the objection was sustained.

The defendant then undertook to defeat the suit, by establishing an adverse possession of twenty years. The facts on that subject, as proved by the defendant, are as follows:

On the 12th of *December*, 1818, the said *Douglass* executed a conveyance for the aforesaid lands to one *Jonathan · Lindley*. This deed recites that the lands had been conveyed to *Douglass* by the sheriff of *Sullivan* county on the 14th of *November*, 1818, by virtue of two executions in favour of *Eliakim Crosby* against *Stephen Pelton* and *Ephraim H. Squires*, dated the 23d of *October*, 1818. In the spring of 1819, said *Lindley*, who lived in a distant county, visited the lands and walked over them, setting up some of the corners. He then returned home. Three or four years afterwards, he was seen walking across the end of one of the tracts. In the fall of 1821, said *Lindley* executed a lease for the lands to one *Bray*, who, on the 15th of *February* following, began to clear a place for a cabin on one of the quarter sections, viz., the one in section seven, and to procure logs to build the cabin. About the last of the ensuing *March*, the cabin was finished, and *Bray* and his family moved into it. He enclosed three or four acres of the land adjoining the cabin, and lived there about a year. During that time, neither he nor any one else made any improvement on the other quarter section, which was in section thirteen; but that quarter section when *Bray* moved away, remained, in the language of one of the witnesses, " entirely open and wild as it was when he first came to the county." The quarter section on which the cabin and improvement were situate, was called the Timber tract; the

other, on which there was no improvement, was called the Prairie tract. They were not adjoining, but were a half a mile from each other. About a year after *Bray* had built his cabin, he sold his lease to one *Wright,* who went to live in the same cabin. In 1829, *Jonathan Lindley* being dead, *William Lindley,* who was reputed to be his son, conveyed said two tracts of land to said *Wright* who held possession of them until 1833, when he sold the same to the defendant, who has occupied them ever since. There was no improvement made on the Prairie tract until 1824 or 1825; and it is for a part of that tract that the present ejectment is brought.

We have now stated, substantially, all the evidence given in the cause by both parties.

There were some instructions given to the jury, to which exceptions were taken by the defendant, but we have not found it necessary to examine them.

The first question in this cause is, whether the copy of the record of the patent to *Stephen Pelton* was admissible evidence?

The patent was recorded in the general land office, under an act of congress, and the copy was evidence, provided the absence of the original was sufficiently accounted for. The plaintiff might, perhaps, rest this point on the fact, that as his lessors were not the patentees, they cannot be presumed to have the custody or control of the patent; but they need not rely solely on that ground. There was proof that diligent search for the original patent had been made without effect among the papers of *Aaron Remer,* deceased, under whom the joint lessors claim; and that the search was made by the person into whose hands those papers came at *Remer's* death. It is true, that this evidence does not appear to have been given until after the copy of the patent had been read; but that circumstance is not material. The plaintiff, we think, might show, at any time during the trial, that the evidence previously given was admissible.

The next question is, was there evidence to authorize the jury to say that the land in dispute, supposing it to have been *Aaron Remer's,* descended to the lessors (except *R. G. Wait*) as said *Remer's* heirs? and we think there was such evidence.

Those lessors were proved to be the legitimate children of said *Remer;* and though the deceased made a will, nothing was proved as to its contents, or as to the manner of its execution. The presumption is, that the children of the deceased took his land here as his heirs, until it is shown that his will was so executed that conformably to our laws it would pass real estate; and that its contents were inconsistent with his children's claim to the land as his heirs.

The next question is, was the record of the attachment suit admissible in evidence?

In *January*, 1818, a statute was passed forming the county of *Vigo* out of the county of *Sullivan*. That act took effect from and after its publication; and it was published in *July*, 1818. It was, from the nature of it, a public act. *Commonwealth* v. *Springfield*, 7 Mass. 9. The judgment, the record of which was offered in evidence, was rendered by the *Sullivan* Circuit Court several months after the said statute took effect; and though it was a judgment rendered in the suit commenced by attachment, it was not for the sale of the lands attached; but it was merely that the plaintiff recover of the defendant a certain sum of money. The execution, which afterwards issued on that judgment, was no authority for the sheriff of *Sullivan* county, to whom it was directed, to levy on the land now in dispute, which was situate in *Vigo* county. His levy on that land, and his sale of it, were void; and the record of the proceedings was no evidence to show a title in the purchaser of said land at that sale.

There is another objection to said record as evidence. The attachment was issued under the act of 1807, and the proceedings in the suit were pending when the act of 1818 relative to foreign attachments took effect. The 5th section of the act of 1818 enacts, "That all laws and parts of laws heretofore in force relative to foreign attachments are hereby repealed." Acts of 1818, p. 97. There being no clause in the repealing act providing for pending suits, the said attachment suit was at an end upon the taking effect of that act. The proceedings in the suit, which were subsequent to the absolute repeal of the law to which they owed their existence, were *coram non judice* and void. This point was expressly

decided by this Court in *Hunt et ux.* v. *Jennings,* 5 Blackf. 195. Since that case, the subject has been very fully examined by the Supreme Court of *New York,* and the doctrine above stated clearly established. *Butler* v. *Palmer,* 1 Hill, 324.

The next question is, was there an adverse possession of the land in dispute which would bar the action?

There is no evidence that, twenty years (the time limited by the statute) before this suit was brought, there was an adverse possession taken by any person of the quarter section of which the land sued for is a part. Such possession was not shown by the proof that *Jonathan Lindley,* in 1819, walked over the land once and set up some of the corners; and that three or four years afterwards he walked across the end of one of the tracts. The only evidence of adverse possession for twenty years before the commencement of the suit, is the building and occupation of a cabin, and the enclosing of three or four acres of land adjoining it, on the quarter section called the Timber tract, which is a different quarter section from the one containing the land now sued for. The quarter section on which said improvement was made was not adjoining the other, but was distant from it a half a mile. That the conveyance to said *Lindley,* and his lease to *Bray* who built the cabin, were for both quarter sections is not material. The small improvement made upon one of the tracts, whatever effect it might have as to that tract, could be no authority for setting up an adverse possession of the other tract. *Carson* v. *Burnett,* 1 Dev. & Bat. 546.—*Farrar* v. *Eastman,* 1 Fairf. 191.

The last question raised is, whether, if there had been an adverse possession of the premises in question for twenty years, the action would have been barred?

The lessors, and those under whom they claim, had none of them resided in this state within twenty years before the suit was commenced; they being all resident in the state of *New York.* The statute of limitations of 1831, which was in force when the suit was commenced, excepted from its operation persons beyond the seas. In 1843, pending this suit, the legislature passed an act declaring that the words " or any person beyond the seas," in the proviso to the act of 1831, &c., should, by all Courts in this state, be construed to mean

beyond the jurisdiction of the Courts of the *United States.* <span style="float:right">Nov. Term, 1847.</span>
Acts of 1843, p. 24. Previously to this act of 1843, the
words "any person beyond seas" had been frequently de-    STEPHENSON
cided to mean beyond the jurisdiction of the state.    That is    <span style="float:right">v.<br>DOE.</span>
the decision of the Supreme Court of the *United States* in
*Murray* v. *Baker*, 3 Wheat. 541.—*Shelby* v. *Guy*, 11 *id.*
361.—*Bank of Alexandria* v. *Dyer*, 14 Peters, 141.    The
same decision has been made in several of the state Courts.
*Forbes* v. *Foot*, 2 M'Cord, 331.—*Pancoast* v. *Addison*, 1
Harr. & J. 350.—*Richardson* v. *Richardson*, 6 Ohio, 125.—
*West* v. *Pickesimer*, 7 *id.* 235.

In the present case, the Circuit Court determined that the
words "beyond the seas," in the statute of 1831 then in force,
meant beyond the limits of the state; and we think the deci-
sion is correct.   There could not be the slightest doubt on the
subject, were it not for the act of 1843; and we are satisfied,
after much reflection, that that act can make no difference.
The plaintiff had a right to the decision of the Court as to
the meaning of the statute applicable to his case, indepen-
dently of the declaratory act, which was passed whilst the
suit was pending.   This point is settled by the Supreme
Court of the *United States*, where the question was, wheth-
er an action was barred by a statute of limitations of *North
Carolina*, passed in 1715?   Doubts having been entertained
whether that act had been repealed or not by an act of 1789,
the legislature, to remove those doubts, passed a declaratory
act in 1799.   The last-named act declared, that the act of
1789 should not be considered a repeal of the statute of li-
mitations of 1715.   The suit in which the question arose, as to
whether the said statute of limitations was repealed, was
commenced in 1798, and was pending when the declaratory
act of 1799 was enacted.   The Court decided, in direct op-
position to the declaratory act, that the said statute of limita-
tions was repealed by the act of 1789, and that the suit was
not barred.   *Ogden* v. *Blackledge*, 2 Cranch, 272.   If that
case is law, and we think it is, the present suit cannot be af-
fected by the act of 1843; and without that act, the lessors'
claim could not be barred by an adverse possession.

*Per Curiam.*—The judgment is affirmed with costs.

A. *Kinney*, S. B. *Gookins*, and R. W. *Thompson*, for the plaintiff.

J. P. *Usher* and W. D. *Griswold*, for the defendant.