McEntire and Others *v.* Brown.

28 347
146 539

Tax Deed.—Evidence.—In an action to recover the possession of real estate, the defendant claimed title under a tax deed. The deed, which was executed under the R. S. 1838, did not recite several of the facts necessary to constitute a valid tax sale. The court instructed the jury that the tax deed "is presumed to be legal so far as is shown by the evidence in this cause."

*Held*, that the instruction was erroneous.

Limitations.— Successive Disseizins.— Separate, successive disseizins cannot be tacked so as to constitute in law one disseizin and a continuous single possession, unless there is a privity of estate between the successive parties.

Same.—Dowress.—Where the husband died while the R. S. 1843 were in force, it will be presumed, nothing appearing to the contrary, that the widow took as dowress.

Same.—As, under that law, the widow was entitled to occupy in common with the heir any lands in which she was entitled to dower, until objection was made by the heir, such an occupancy by her would be a continuance of the possession of the husband, and not a new disseizin.

Statute of Limitations.—Retroactive Effect of.—The statute of limitations contained in the code of 1852 is retroactive in its operation, and bars an action to recover real estate which is not commenced within the period limited, after the cause of action accrued.

Same.—Conflicting Instructions.—In an action to recover real estate,

McEntire and Others *v.* Brown.

the defendant pleaded the statute of limitations, and gave evidence tend-
ing to show that he had been in possession of the land under a tax deed
for more than twenty years. The court instructed the jury that the
plaintiffs' cause of action accrued at the date of the tax sale.

*Held,* that the instruction was erroneous, and that the error was not cured
by the giving of another instruction to the effect, that when the claim of
title is only colorable, the cause of action does not accrue until possession
is taken under it.

APPEAL from the *Knox* Circuit Court.

FRAZER, C. J.—This was an action to recover the posses-
sion of real estate. Verdict for the defendant, motion for a
new trial overruled, and judgment upon the verdict. The
motion for a new trial was based upon several grounds,
and such of them as we propose to notice will be stated
as we discuss them.

The plaintiffs claimed title under a patent from the *United
States,* and made a good *prima facie* case by their evidence.
The defendant relied upon a very defective tax sale, made
to her husband, in *July,* 1836, and the statute of limitations.
*Brown,* the husband of the defendant, it appeared by the
evidence, took possession soon after his purchase for taxes,
perhaps more than twenty years before the suit was begun,
and continued in possession, claiming title, until his death,
which occurred in 1852. Since his death, his widow has
continued in possession, also claiming title. The nature of
her title in no wise appears, save as it may result from the
fact that she is *Brown's* widow. No assignment of dower,
no partition, no conveyance or devise to her, nor that she
took as heir of her husband, is shown by the evidence. By
the law in force when the tax deed was made, it was *prima
facie* evidence of the facts therein recited. Rev. Stat. 1838,
§ 7, p. 548. The deed itself was the only evidence offered
of the facts necessary to authorize a sale for taxes, and it
was utterly silent as to many of those the proof of which
has been repeatedly held by this court, and by all courts, to
be essential to maintain the validity of such a sale. But
the court instructed the jury that the tax deed "is presumed
to be legal, so far as is shown by the evidence in this cause."

This was manifestly incorrect, and in conflict with all the authorities. The court also instructed that if *Brown*, the husband, purchased and received a deed for the land in 1836, and went into possession more than twenty years before the commencement of the suit, claiming title under the deed, and so continued until his death in 1852, and after that the defendant, as his widow, went into, and has ever since continued in possession, claiming title, then the law was for the defendant.

It is well settled that separate successive disseizins cannot be tacked so as to constitute in law one disseizin, and a continuous single possession, unless there be a privity of estate between the successive parties so in possession, each coming in as the assignee of his predecessor, such as heir, grantee, or devisee; and if no such privity of estate exists, the seizin of the true owner revives at the termination of the possession of each disseizor, and a new disseizin is made by each successor. *Doe* v. *Campbell*, 10 Johns. 475; *Jackson* v. *Leonard*, 9 Cow. 653; *Wade* v. *Lindsey*, 6 Met. 407; *Polts* v. *Gilbert*, 3 Wash. C. C. 475; *Allen* v. *Holton*, 20 Pick. 458; *Sawyer* v. *Kendall*, 10 Cush. 241.

Was there such privity of estate between *Brown*, the deceased, and his surviving widow, the appellee? *Brown* died before the act of 1852, concerning descents, took effect. His widow then took dower, unless she was entitled to take as heir and elected to do so. Rev. Stat. 1843, §§ 117, 118, 119, p. 437. That she took as dowress must be presumed in the absence of proof to the contrary. *Id.*, § 120. It is argued for the appellant that a widow, taking only dower, has no privity with her husband to connect her own disseizin with his, so that the statute of limitations will begin to run with his possession. And to this point, *Sawyer* v. *Kendall*, *supra*, is cited. That case is conclusive upon the subject, where the widow takes only dower as at common law. The reason upon which it rests is that dower is a mere right, conferring no title to the land, or right of entry, until assignment is made. The act of 1843, however,

enlarges in some degree the rights of the widow, by providing that she may occupy, in common with the heir, any lands in which she is entitled to dower, before assignment, and until the heir shall object thereto. Rev. Stat. 1843, § 107, p. 810. By occupying, therefore, without objection from the heir, she would not be a wrongdoer, as would have been the case at common law. This right of occupancy is at the will of the heir, but so long as he does not terminate it, it is good against the rest of the world. It is a right which the law transmits to her from the husband. It is his possession passed to her, liable, however, to be terminated by the heir. There was, therefore, under this statute, a privity of estate, and her possession was but a continuation of his—there was but one disseizin.

But it is contended that the instruction under consideration was not applicable to the evidence in the case. The patent was issued to one *William Wells*, who died in 1812, leaving *Yelverton P. Wells* his heir at law, who always lived in *Kentucky*, and died there in 1840. *Mary E. Wells* was the heir at law of *Yelverton*, and was born at *Louisville*, *Kentucky*, in 1840, and the plaintiffs are her heirs at law. The proposition of the appellants is that the bar of the statute of limitations, in view of these facts, only began to run when the present code took effect. The argument to maintain it is, that it did not bar while the statute of 1831 was in force, for the reason that the ancestor of the plaintiffs, then holding the title, was a non-resident of the State, and within the exception of that statute. *Stephenson v. Doe*, 8 Blackf. 508. That until the taking effect of the act of 1843, the plaintiffs were, therefore, protected by the act of 1831; that the act of 1843 was repealed by the code containing the present statute of limitations, under which this suit was brought, and so does not affect the case at all, and that it is enacted that no part of the code "shall be retroactive, unless expressly so declared." 2 G. & H., § 801, p. 336.

This question, viz., whether the present statute of limitations can be held to have begun to run as a bar at a pe-

riod anterior to its taking effect, was involved in *The State* v. *Swope*, 7 Ind. 91, and it was resolved in the affirmative. But section 801 of the code seems not to have been considered on that occasion, and it was, doubtless, not brought to the attention of the court. That section furnishes a rule of construction which is binding upon us, and cannot be disregarded, however well satisfied we may be that in a given case it would be mischievous. Its application, in its broadest sense, to some provisions of the code would probably be found to work results astonishing as well as novel, and also to furnish somewhat convincing evidence that the rules for the construction of statutes, which the common law furnishes, and which have grown out of the experience and wisdom of ages, are quite as well calculated to accomplish just ends. The language of the section is itself, however, subject to construction and limitation. It might, taken alone, receive an interpretation, without violence to its terms, and indeed without departing from the strictly literal meaning of the words employed, which would forbid the retroactive effect of almost every section in the whole code, for there are few, if any, which it is "expressly declared" shall be retroactive, though there are many which are so framed that they cannot have the effect which their terms plainly signify, and which was certainly intended, without giving them a retrospective as well as a prospective operation. To limit such sections to a prospective effect would be to give them an interpretation entirely different from the plain import of the language in which they are expressed; and if such be the effect of section 801, then we have the novelty of an act required by one of its own provisions to be so construed as to mean less than its language plainly expresses. But it is clear that this was not the intention of the legislature. This section is one of several rules of construction contained in article 48 of the code, and the first section of that article (§ 797) expressly provides that these rules "shall be observed when consistent with the context." This limits the application of section 801, and relieves the

code from the peril of being construed in some of its parts in a manner which would set at defiance its express language and plain import. Now, the statute of limitations applicable to the case before us is as follows:

"The following actions shall be commenced within the periods herein prescribed, after the cause of action has accrued, and not afterwards:      *      *      *      *      *

5.      *      * for the recovery of the possession of real estate within twenty years." 2 G. & H., § 211, p. 158.

This language cannot be limited to the future, as to the period the completion of which shall bar the action. It plainly means that if the suit be not brought until twenty years after it might have been brought, it shall not be maintained. No court anywhere has ever hesitated, that we are aware of, to hold that such a statute, so worded, operates retroactively as well as prospectively by its express terms, and it has been often so ruled, in obedience to the plain language employed, when pressing considerations of justice would have compelled a different decision if it had been possible. *The State* v. *Swope, supra,* is one of many instances of this kind.

The jury was instructed that the "right of action accrued as soon as *Brown* purchased the land." This was so clearly wrong, that it is so conceded on behalf of the appellee; but it is contended that the error was cured by previously giving an instruction, prayed by the plaintiffs, to the effect that when a claim of title is merely colorable, the cause of action accrues at the time of taking actual possession of the land, and not at the date of the instrument giving color of title. We do not agree that the court, after giving a correct and pertinent instruction at the instance of the plaintiff, could, without error, give another in direct antagonism with the first. Nor can we say, in this case, that the errors of the court in instructing the jury could not have injured the appellants, nor that the verdict was so clearly correct upon the evidence that the judgment should be affirmed notwithstanding the errors in the record.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*J. C. Denny*, for appellants.

*W. E. Niblack* and *W. H. De Wolf*, for appellee.

The judgment is reversed, with costs, and the cause remanded for a new trial.