[No. 145.  Decided March 4, 1891.]

TRADERS' BANK OF TACOMA, THE MERCHANTS' NATIONAL BANK OF TACOMA, BANK OF BRITISH COLUMBIA, AND REBECCA B. EWING v. F. D. VAN WAGENEN, C. E. SACKETT, AND WILLIAM PAGE, *Copartners, et al.*

INSOLVENCY — ATTACHMENT — FRAUD.

Under ? 2022 of the Code of 1881, after the court, in insolvency cases, has made an order staying all proceedings against the debtor, the court has no authority to set aside the stay or allow attachment proceedings commenced against his property.

Under the laws of this state, after the institution of insolvency proceedings, all questions relating to the fraud of the debtor should be tried therein, and if the debtor is convicted of fraud he cannot obtain his discharge, nor the return of his estate, as that has become vested in the assignee for the benefit of his creditors.

*Appeal from Superior Court, Pierce County.*

The facts are fully stated in the opinion of the court.

*Seymour, Griggs & Lockwood, Doolittle, Pritchard & Stevens, E. T. Dunning,* and *Effinger & Abbott,* for appellants.

The current of modern authorities is to the effect that a creditor having an attachment lien may maintain a creditor's bill, and especially where it is shown, as it is in this case, that he has exhausted all legal remedies and can take no further steps in a court of law, then a court of equity will interfere in his behalf.    *Case v. Beauregard,* 101 U. S. 688; *Falconer v. Freeman,* 4 Sandf. Ch. 565; *Heyneman v. Dannenberg,* 6 Cal. 376 (65 Am. Dec. 519); *Scales v. Scott,* 13 Cal. 77; *Robert v. Hodges,* 16 N. J. Eq. 299; *Curry v. Glass,* 25 N. J. Eq. 108; *Tappan v. Evans,* 11 N. H. 311; *Russell v. Clark,* 7 Cranch, 89; *Edson v. Cummings,* 52 Mich. 52 (17 N. W. Rep. 693); *Shaw v. Dwight,* 27 N. Y. 244 (84 Am. Dec. 275); *Stephens v. Beal,* 4 Ga. 319; *Stone v. Anderson,* 26 N. H. 506; Drake, Attachm., § 225; Bump, Fraud. Conv., 524; *Perkins v. Fourniquet,* 14 How. 314; *Kahn v. Salmon,* 10 Sawy. 183 (20 Fed. Rep. 801), cited with approval in *Thompson v. Caton,* 3 Wash. T. 31.

*Judson, Sharpstein & Sullivan,* for appellees C. E. Sackett, F. D. Van Wagenen, Rolla M. Sackett, and Eleanor V. Van Wagenen.    *William H. Reid,* for appellees William and Sarah Ann Page.

A creditor can file a bill to annul a fraudulent transfer only after the return of an execution unsatisfied, or in aid of an attachment after judgment.    See Wait, Fraud. Conv., § 81, and cases cited; *Weil v. Lankins,* 3 Neb. 384; *Tennent v. Battey,* 18 Kan. 324; *Martin v. Michael,* 23 Mo. 50 (66 Am. Dec. 656); *Greenleaf v. Mumford,* 19 Abb. Pr. 469;

*Mills v. Block,* 30 Barb. 549; *Melville v. Brown,* 16 N. J. Law, 364; *Brooks v. Stone,* 19 How. Pr. 395; *Bigelow v. Andress,* 31 Ill. 322; *Thurber v. Blanck,* 50 N. Y. 80; *Brinkerhoff v. Brown,* 4 Johns. Ch. 671; *Griffin v. Nitcher,* 57 Me. 270; 3 Pom. Eq. Jur., § 1415, and notes.

The opinion of the court was delivered by

Dunbar, J.—This is a suit in equity in the nature of a creditors' bill, brought by the plaintiffs in error in their own behalf against the defendants to obtain relief by having various conveyances, executed by the individual defendants F. D. Van Wagenen, C. E. Sackett, and William Page to their wives, set aside, canceled, and decreed to be fraudulent and void as against creditors. To this bill certain of the defendants, among them F. D. Van Wagenen and wife, C. E. Sackett and wife, and William Page and wife, demurred. It appears by the bill of complaint demurred to that the defendants F. D. Van Wagenen, C. E. Sackett, and William Page were copartners in trade under the firm name of the Buckley Lumber & Shingle Manufacturing Company, and as such copartners had become indebted by notes and accounts at different times to the plaintiffs, respectively, in different amounts. That said copartners owned property, both real and personal, as copartners, on the 22d day of January, 1890, at which time they executed and filed application to the superior court of Pierce county as "insolvent debtors" for a discharge from their debts, and made and delivered therewith an assignment of all their property; and an order staying all proceedings upon the part of their creditors was thereupon duly made by the court, and the usual order to show cause was made by the court and published, and a receiver to take charge of the property was duly appointed. Afterwards, upon application of the plaintiffs severally applying, said superior court set aside the stay of proceedings pre-

viously ordered, and allowed each of the plaintiffs to commence an action at law upon their several notes and accounts, and to issue attachments against the assigned property and such other property of said insolvents as might be found. That afterwards, and under color of said attachments, the sheriff of Pierce county attempted to levy the same upon certain premises or lands of the defendant Sarah Ann Page, described in the complaint, which was land acquired previous to the formation of said copartnership by the joint labors of said William Page and Sarah Ann Page, his wife, which was held by them as community property until the 28th day of September, 1889, when a portion thereof was transferred by him to her for a valuable consideration, and on the 18th day of January, 1890, the remainder thereof was likewise sold and deeded to his said wife, who was then the sole owner. That after filing notice of levy of aforesaid attachments upon said premises, the plaintiffs, by leave of the court, upon separate motion filed the bill of complaint herein, to which defendants separately demurred. That said several individual actions at law, in which said several attachments were issued, have not been tried, and the plaintiffs have not obtained judgment in any of said actions, but have jointly filed the bill of complaint herein upon the same several alleged claims and indebtedness set forth for cause of action in each of said actions at law pending, and upon which said attachments were issued.

The grounds of demurrer alleged were "that the court had no jurisdiction of the persons of defendants or the subject-matter of the action; that there was another action pending between the same parties for the same cause; that several causes of action were improperly united in said complaint; that the plaintiffs had no legal capacity to sue; that there was a defect of parties defendant; that the complaint did not state facts sufficient to constitute a cause of

action." Certain of the defendants also interposed motions to the complaint embracing substantially the same grounds of objection as set forth in the demurrer. There were two separate demurrers filed by counsel representing different defendants, but they raise substantially the same questions and will here be considered together. The demurrers were sustained by the court below, and an order made dismissing the bill of complaint. From this order plaintiffs have appealed to this court.

The constitutionality of the insolvent act is questioned in appellant's brief, but was practically abandoned in the oral argument of the case. No sufficient reason appears for pronouncing the law unconstitutional.

It is contended by appellees that an attachment lien before judgment is not a sufficient basis for an action in the nature of a creditors' bill. On the other hand, while it is conceded by appellants that formerly it was the generally recognized rule that a creditors' bill to set aside fraudulent conveyances could not be obtained until after judgment, the issuing of execution, and the return of *nulla bona*, yet it is contended that the current of authorities is to the effect that a creditor having an attachment lien may maintain a creditors' bill, especially where it is shown that he has exhausted all legal remedies; and many authorities are cited in support of both contentions. Whatever may be the law as to the general proposition, there is one element in this case that is not reached by the cases cited by the appellants; that is the question whether or not, conceding that a creditors' bill can be maintained by virtue of an attachment lien, it can be maintained against a defendant who has surrendered his estate for the benefit of his creditors under an insolvency law similar to the insolvency law of the Code of Washington, and especially by virtue of an attachment issued in an action commenced after proceedings in insolvency have been instituted. Several cases have

been cited from New Jersey, but there the statute by special provision makes the levying of the attachment a lien for the equal benefit of all the creditors who shall apply to the court or to the auditor for that purpose, and holds the property of the defendant bound for the satisfaction of all the applying creditors. The case of *Kahn v. Salmon*, 10 Sawy. 183 (20 Fed. Rep. 801), is an Oregon case, and the attachment was issued prior to the assignment. Also under the laws of Oregon an attachment can only issue upon due proof of the plaintiff's claim (Code Civil Proc., § 143); and the court in the case cited commented upon that provision as follows: "As between the parties to the action, the fact of the indebtedness is thereby established until the attachment is vacated or discharged."

In this state no proof is required, and no presumption obtains that the claim of the attaching creditor is a valid one, but the writ issues by the clerk upon the filing of the affidavit and bond. It is admitted by the appellants that their only basis of action is their attachment lien, and they bring their action for the benefit of themselves and all other creditors who will join them in the action and share the expenses of the suit. Under this theory of the case, if the creditors not having attachment liens were to join them, there would certainly be a misjoinder of parties plaintiff; for those not having the attachment liens would have no legal capacity to sue in this action. On the other hand, if the creditors not having liens cannot come in, the result would be that the action of the court in allowing appellants' attachment proceedings would result in a discrimination against all other creditors, and that, when the assets were marshaled according to the prayer of the petitioner, the divison could only be made between the creditors who were parties to the writ; and this is a result the obtaining of which the appellants in their argument disclaim. And this brings us to the investigation of a proposition lying at

12—2 WASH.

the very threshold of the case, viz., the action of the court in allowing appellants' attachment proceedings after the institution of the proceedings in insolvency. Section 2022 of the insolvency act, under which these proceedings were had, provides that " when issuing the order for the meeting of the creditors the judge shall order that all proceedings against the debtor be stayed." This provision seems to be plain, imperative, and susceptible of no two constructions; and the only proviso is one necessary to make the act operative, viz., that the said stay of proceedings shall not prevent the judge who shall have granted it from appointing a receiver to take possession of all property of the debtor for the benefit of all his creditors, if one or more of his creditors shall apply, etc. Some force must be given to this mandatory provision of the statute, and the force to be given is the force expressed, viz., to stay the proceedings. The evident reason for this mandatory provision is to prevent a multiplicity of actions and the squandering of the estate in costs, until the question of the debtor's discharge is settled by the court; and there is no provision in any subsequent section of the act authorizing the court to set aside the stay commanded by § 2022, or to allow any other proceedings to be commenced; and, in the absence of such authority, the action of the court was illegal, and the attachment proceedings were void. Whatever may be the potency and effect of an attachment levied prior to the cession of the estate, we cannot understand upon what theory a court will allow an attachment to issue against property which is already under the control of the court. It is placed there by virtue of the insolvency proceedings for the benefit of all the creditors. Certainly, when property is placed in custody so high as this, it will not be subject to a scramble of the creditors to obtain liens upon it to the exclusion of the rights of other creditors. The usefulness of the court, by

such a practice as this, would be entirely destroyed. With one hand it would attempt to destroy the very thing which the other hand was protecting. By such a practice, not only would the mandatory provision of § 2022 become a dead letter, but the whole object of the law would be thwarted. Courts are authorized to take charge of insolvent estates for the benefit of all the creditors, and not to create preferred creditors on *ex parte* applications or otherwise. The statute of insolvency, though possibly awkward in its expressions, is full and complete in itself; and it is evidently contemplated that all the questions relating to the fraud of the debtor should be tried in the insolvency proceedings.

Section 2033 provides that, in case after the appointment of said assignees any one of the creditors of the insolvent debtors should deem it necessary to oppose it on the ground of some fraud having been committed by the said insolvent debtor, or of the appointment not having been legally made, he shall, within ten days next following the appointment of said assignee, lay before the court or judge which has already taken cognizance of the case his written opposition, stating especially the several facts of nullity of the said appointment, or of fraud by him alleged against the insolvent debtor; whereupon, in case of accusation of fraud after having received said insolvent debtor's answer, the court or judge shall order a jury of not less than six men to be summoned in the same manner as jurors are summoned in the district court, for the purpose of deciding on the said accusation. Section 2034 provides for the proof of the notice. Section 2035 provides that, where the accusation is fraud, the creditor shall have a chance to interrogate the insolvent debtor on his oath concerning the state of affairs, and the several transactions in which he may have been engaged anterior to his failure, as he shall think proper, and the insolvent shall answer such interrogations,

etc. Section 2036 provides that "if the jury   .   .   .
declare in their verdict that said insolvent shall be guilty
of fraud, the said debtor shall forever be deprived of the
benefit of the laws passed for the relief of insolvent debtors
in this territory." Thus it will be seen that the act itself
points out specifically the manner in which the question
offered is to be determined by the court. It is true that in
the case of *Thomas v. Hilton*, 3 Wash. T. 365 (17 Pac.
Rep. 882), it was held by a divided court that the provis-
ion for a jury of a less number than twelve was unconsti-
tutional, but the same court gave effect to the finding of
the judge on the testimony under the succeeding sections.
The insolvency law is very different from a common-law
assignment, and authorities cited to prove that the common-
law assignments could be attacked collaterally by suits in
equity are not in point. No other remedy was available.
If the assignment was thought to be fraudulent, the pro-
ceedings were not in court, and there were no provisions
made for the investigation of the question of fraud; but
the insolvency law here was made for the benefit of both
debtor and creditor. Nor do we think, as alleged by ap-
pellants, that they are unavailing to the creditors to obtain
satisfaction of their claims. It is their object to protect as
well the rights of the creditors as the debtor, and every in-
vestigation can be made, and every inquiry put on foot, in
the insolvency proceeding that could be in a collateral suit.
The assignee is the agent of the creditors. He is elected
by them, is presumably in sympathy with them, and is their
representative. They need not rest content with the prop-
erty turned over by the debtor if they think he has not made
a full return, but the assignee has power to bring all actions
which may be necessary to be brought to protect the rights
either of the insolvent or the creditors. See § 2027.

The last contention of the appellant is, that the insolv-
ency law furnishes no remedy for the creditors, because, if

the insolvency proceeding fail and the debtor is not discharged, the estate cannot be distributed among the creditors. On this proposition is cited § 2041 of the Code of Washington, and *Sanborn v. His Creditors,* 37 Cal. 609. We do not see in what way the section of the code referred to confirms this position. It simply provides that, if the debtor is convicted of a certain character of fraud, he shall be debarred of the benefit of this chapter. That simply means that he shall not obtain his discharge. It cannot mean that he cannot apply for the benefits of this chapter, for he has already applied. There is no provision or implication, however, that his estate shall be returned to him. If the California statute is the same as ours, we cannot indorse the conclusion arrived at by the court in the case cited. Section 2046 of the Code of Washington reads as follows:

"From and after the surrender of the property of the insolvent debtor, all property of such insolvent shall be fully vested in his assignee or assignees for the benefit of his creditors, and shall not be liable to be seized, attached, taken or levied on by virtue of any execution issued against the property of said insolvent; and the assignees who may be appointed shall take possession of and be entitled to claim and recover all the said property."

Language could not well be made stronger than this. When property once becomes fully vested for the benefit of the creditors, that vested right in it cannot be destroyed or affected by the subsequent determination of the question of the debtor's discharge. There is no reason why it should be. He owes these debts. His exempt property has already been set aside by the court. He is in no worse position than he was before the proceedings commenced; for this identical property would then have been liable to an execution of his creditors. The first thing he must do under this law is to make the assignment for the benefit of his creditors. When that is done the property is fully

vested in them.    The question of "discharge" is for sub-
sequent consideration.    If the debtor fails to receive it, it
is presumed to be on account of his fraudulent acts, and
cannot affect the property which he has seen fit to sur-
render.    Any other construction of the law would result in
placing a premium on fraud, and would work a hardship on
creditors who, by reason of such surrender, had been put to
the trouble and expense of appearing in the proceedings.
With this view of the proposition discussed, it is not neces-
sary to discuss the other propositions argued by counsel.
The judgment of the court below is affirmed, with costs to
appellees.

ANDERS, C. J., and HOYT and SCOTT, JJ., concur.

STILES, J. (*concurring*).—I concur in the decision, and
desire to say further that the bill in this case clearly set
forth that the property sought to be affected by it was pur-
chased by the partners with money fraudulently diverted
by them from the partnership funds.    If that is the fact,
it is still, in equity, partnership property, although the legal
title may have been taken in the name of the partners' wives;
and, although it was not included in the partnership sched-
ules, the assignee can sue for and recover it for the benefit
of all creditors.    If the assignee, upon being put in posses-
sion of the facts, neglects or refuses to proceed, he can be
compelled to proceed by the court upon the motion of any
creditor.    The question of discharge cannot affect the case
in any way.    It is very difficult to see how there can be
a discharge in a case of partnership insolvency where the
partners do not schedule their individual property and lia-
bilities.