[No. 716.  Decided March 7, 1893.]

COKE EWING, *Assignee in Insolvency, Appellant*, v. F. D. VAN WAGENEN *et al., Respondents.*

INSOLVENCY — EFFECT OF REPEAL PENDING PROCEEDINGS — COM-MUNITY PROPERTY — FRAUDULENT CONVEYANCE — PLEADING — APPEAL.

Where proceedings in insolvency were begun under the provisions of the Code of 1881, and a receiver appointed to take charge of the insolvent estate for the benefit of creditors, the repeal of the Code provisions by the act of March 6, 1890, while the proceedings were pending, will not affect the title of an assignee appointed in such insolvency proceedings subsequent to the repeal.

The fraudulent conveyance by a husband to his wife of community property is not a transfer by one joint debtor to another.

A plaintiff is not called upon to reply to an affirmative defense while his demurrer to a special defense remains undetermined.

A statement of facts is not required on appeal in an equity cause where the whole case has been determined upon the pleadings.

Where bond for stay of proceedings has been given it covers the costs on appeal, and no further bond for such costs is necessary.

*Appeal from Superior Court, Pierce County.*

*W. H. Pritchard,* and *E. T. Dunning,* for appellant.

*Crowley & Sullivan,* and *William H. Reid,* for respondents:

The court did not err in dismissing the bill for the reason that it did not state facts sufficient to constitute a cause of action. . The complaint alleges partnership between Van Wagenen, Sackett and Page under the name of the Buckley Lumber and Shingle Manufacturing Company, and that they transferred certain pieces of real estate to their respective wives, with intent to defraud creditors, such real estate being community property.   The transfer of property from one joint debtor to another joint debtor does not constitute such a fraud as will justify an interference by a

court of equity. *McPhee v. O'Rourke*, 10 Col. 301.   The
property not being subject to execution and sale because
of its community character, there certainly could be no
fraud in making a transfer of it.   The intent to defraud
would not make the property liable for debts, unless it was
liable to be subjected to sale upon execution at the time
the transfers were alleged to have been made. *Brotton v.
Langert*, 1 Wash. 73; *Littell & Smythe Mfg. Co. v. Mil-
ler*, 3 Wash. 481; *Boggs v. Thompson*, 13 Neb. 403; *Gilles-
pie v. Brown*, 16 Neb. 457; *Smith v. Rumsey*, 33 Mich.
183 (and note); *Aultman v. Heiney*, 59 Iowa, 654.

There is a wide difference between an assignee and a re-
ceiver.   In the case of an assignee, when appointed and
qualified, the property of the debtor is transferred to him,
and he becomes vested with title; on the other hand, a tem-
porary receiver simply has a right to the possession of the
property to preserve the same during the pendency of the
proceeding, under the direction of the court, but has no
title whatever to the property itself. *Chicago Union Bank
v. Kansas City Bank*, 136 U. S. 223; *Gaither v. Stock-
bridge*, 67 Md. 222; *Quincy, etc., R. R. Co. v. Humphreys*,
145 U. S. 82.

Up to the appointment of the assignee, the proceedings
are preliminary.   In other words, the action is commenced,
but there is no divestiture of title, and nothing which gives
any one except the assignor any interest in the property.
Before the actual appointment of the assignee, in the pres-
ent case, the law governing this matter was repealed, and
this repeal took away, not any vested right, because none
existed, but simply a remedy, which can always be done.
*Gilmour v. Ewing*, 50 Fed. Rep. 656.   It is a familiar
principle that, wherever the jurisdiction exercised in pro-
ceedings depends wholly upon statute, and the statute is
repealed, the jurisdiction is gone, and with it the whole pro-
ceeding, imperfect at the time of the repeal, falls to the

ground, unless there be a reservation as to pending rights or causes. *Ex parte McCardle,* 7 Wall. 506; *Insurance Co. v. Ritchie,* 5 Wall. 541; *Norris v. Crocker,* 13 How. 429; *Illinois, etc., Canal v. City of Chicago,* 14 Ill. 334; *Lamb v. Schottler,* 54 Cal. 319; *Macnawhoc Plantation v. Thompson,* 36 Me. 365; *Gilleland v. Schuyler,* 9 Kan. 569; *North Canal Street Road,* 10 Watts, 351; *Hampton v. Commonwealth,* 19 Pa. St. 329; *Hunt v. Jennings,* 5 Blackf. 195; *Butler v. Palmer,* 1 Hill, 324; *James v. Dubois,* 16 N. J. Law, 285; *Springfield v. Commissioners,* 6 Pick. 501; *South Carolina v. Gaillard,* 101 U. S. 433; *Todd v. Landry,* 5 Mart. (La.) 459; *Bailey v. Mason,* 4 Minn. 546; *Templeton v. Horne,* 82 Ill. 491; *Van Inwagen v. City of Chicago,* 61 Ill. 31; *State v. Brookover,* 22 W. Va. 214.

The opinion of the court was delivered by

STILES, J.—This appeal presents another phase of the same matter heretofore presented in *Traders' Bank v. Van Wagenen,* 2 Wash. 172 (26 Pac. Rep. 253). Appellant, as the assignee in insolvency of the individuals composing the firm known as the Buckley Lumber and Shingle Manufacturing Company, commenced his action against the insolvents, their respective wives and others who, it is alleged, are holding certain real estate conveyed by the insolvents in fraud of their creditors, to have the several conveyances set aside and the title cleared so that the property may be subjected to the payment of debts which would otherwise be unprovided for.

The allegation of the amended complaint is, that on the —— day of April, 1891, Frederick Mottet was duly appointed assignee; that on the 6th of October, 1891, he resigned and his resignation was duly accepted by the court, and that on the same day the appellant was duly appointed as assignee in the place of Mr. Mottet. To this allegation each of the defendants answered as follows:

"That said insolvency proceedings referred to in the complaint were begun January 22, 1890, and said assignment was made on said date under the provisions of the laws of the State of Washington then in force; that this action is brought by plaintiff under color and pretense of authority of said insolvency proceedings, and since the making of said assignment, said laws of the State of Washington, under which said insolvency proceedings were instituted, have been repealed, and have become without force and effect."

The plaintiff demurred to this separate defense in each answer, on the ground that it did not state facts sufficient to constitute a defense. The demurrers were overruled and, plaintiff electing to stand on his demurrers, the action was dismissed at his cost, and he appeals from the judgment thereupon entered.

Upon the face of these answers the only question which we are required to determine is whether the act of March 6, 1890 (Laws 1889–90, p. 83), entitled "An act to secure creditors a just division of the assets of debtors who convey to assignees for the benefit of creditors," had the effect to put an end to all insolvency proceedings then pending in the courts of the state, where no assignee had been elected when the act took effect.

It is admitted by the respondents that, upon the appointment of an assignee under the insolvency law found in the Code of 1881, all the assigned property of the insolvent passed to such assignee and could not afterwards be divested by the legislature. Under such concession it would not be strictly necessary that we go further in this case, since between the time when the petition for insolvency was filed, January 22, 1890, and the time when the act of March 6th went into effect, almost five months, there was ample time for proceedings, under the code, through which an assignee might have been appointed. The fact that it is alleged that Mr. Mottet was appointed assignee in April,

1891, would not justify this court in presuming that no other assignee was appointed before June 7, 1890, when the act of that year became operative.

There are several provisions of the Code of 1881 which would lead to a different *prima facie* conclusion. Sec. 2018 required the judge receiving a petition to make an order requiring all creditors to show cause, etc.; § 2021 directed that the clerk issue a notice calling the creditors together within thirty days from the date of publication of the notice; and § 2031 provided that if, on the day appointed for the meeting, creditors having been duly summoned did not attend or refused to appoint an assignee, it should be lawful for the judge to authorize the sheriff to accept the surrender of the property offered by the debtor, and perform in every respect the functions of the assignee. That these things had been done in case no assignee had been regularly appointed by the creditors, could be fairly presumed in favor of the demurrer to the answers in this case; but although such might be the condition of things, we cannot overlook the fact that neither party in this case has suggested that any such appointment was made.

The case has been presented here largely upon the assumption that a receiver had been appointed, perhaps under the provisions of § 2022, and that such receiver held the property until the time of Mottet's appointment in April, 1891. No such fact appears in the record in this case, but a glance at the case of *Traders' Bank v. Van Wagenen, supra,* shows that originally a receiver to take charge of the insolvent's estate was duly appointed, and it would seem, therefore, that we should not be discussing a purely imaginary state of things if we follow the briefs of counsel and assume it to be a fact that there was such a receiver.

The position assumed by the respondents is, that whatever might be the temporary orders in a case of insolvency, under the Code of 1881, until an assignee had been ap-

pointed no title to any part of his estate could be divested
out of the debtor, for the reason that that statute contained
no apt provision for the accomplishment of a divestiture
except that found in section 2046, wherein it was declared
that the property of an insolvent debtor should be fully
vested in his assignee for the benefit of his creditors from
and after the surrender of his property. The surrender,
it is said, could not be accomplished until there was an
assignee to whom the surrender could be made; and the
receiver in such a case would be merely a temporary ap-
pointee to preserve the property from being wasted pend-
ing the appointment of an assignee; and the conclusion of
their argument is, that notwithstanding the appointment
of a receiver, there having been no assignee until long
after the act of 1890 had gone into effect, repealing the
insolvency sections of the Code of 1881, there could then
be no further proceeding in the matter, and the whole at-
tempt at an assignment would fail. There is much plausi-
bility in these propositions, and if, upon a review of the
whole statute, it is found that this property had not been
placed in such a position that the court could exercise
jurisdiction to appoint an assignee and proceed with the
matter, the conclusion, however surprising and unfair it
might be, would have to be accepted.

At the outset, so far as the two laws are concerned, we
have recently held that the act of 1890 by implication re-
pealed the code provisions on the subject of insolvent debt-
ors. *Mansfield v. First National Bank*, 5 Wash. 665 (32
Pac. Rep. 789).

It is true, also, that wherever the jurisdiction exercised
in proceedings depends wholly upon statute, which is re-
pealed without any saving provision in the repealing act,
the jurisdiction is gone and all pending proceedings go
with it. Endlich, Interp. Stat., § 479; Sutherland, Stat.
Const., § 165; *N. L. N. R. Co. v. B. & A. R. Co.*, 102 Mass.

386; *Stephenson v. Doe*, 8 Blackf. 508; *People v. Livingston*, 6 Wend. 526.

There was no saving provision whatever in the act of 1890. All laws and parts of laws in conflict with the provisions of that act were repealed by one sweep without an apparent thought that the greatest confusion might follow. It is almost inconceivable that the legislature could have intended such results as are threatened in this case if the respondent's contention be sustained, for what will become of the estate actually reduced to the possession of the assignee? Must it be returned to the debtors, or will it become the subject of a scramble among their creditors through garnishments of the assignee? As we said in the *Traders' Bank* case, *supra*, the law of 1881, so far as the debtor was concerned, appeared to regard the matter of his discharge only, and was framed with a view to the immediate and final appropriation of his property to the payment of his debts from the time of his filing his petition, without much regard to formalities. Nothing contained in either the old or the new statute contemplates a rejection of the debtor's proffer of his property, and there is certainly nothing to show that a contingency might arise where any property in possession of the court or an assignee would have to be surrendered to him.

Sec. 2033, and the sections immediately following, provide for what shall be done in case any creditor, within ten days after the appointment of an assignee, deems it necessary to oppose "it," on the ground of some fraud committed by the debtor. If the fraud is established the debtor is deprived of the benefit of the law; if the allegations fail he is immediately discharged. But not a word is said about the assignee's turning over the property when fraud has been proven; on the contrary, § 2038 expressly provided that the judge might at once "approve the appointment," if he thought that waiting for the trial of the fraud issue

would cause the interest of the creditors to suffer. These are all awkward expressions; but we must make the best of them to the effect that the intent of the law may be enforced.

The view of this statute entertained by the territorial supreme court was forcibly expressed in *Lammon v. Giles*, 3 Wash. T. 117 (13 Pac. Rep. 417), to the effect that a proceeding under it partook more nearly of the nature of a suit in equity than of that of any other procedure known to the law, and that the courts must fall back upon their equity powers to enable them to make complete administration of it. But of what use would be any consideration of this kind if a technical want of acceptance and vesting of the title in an assignee were to be allowed to defeat the entire operation of the law upon a repeal of this kind?

It seems to us that our statute contemplated that by the filing of the petition in insolvency the estate of the debtor was brought into the court, there to remain as a trust fund. for the benefit of creditors, whether the result should be a discharge of the debtor or not; and that a repeal of the law by another law regulating the same subject matter ought not to be taken as sufficient to deprive the court of all jurisdiction where the assignee had not been appointed June 7, 1890. The record now shows that there is an assignee, though it does not specify whether he was appointed under the formalities of the Code of 1881 or of the act of 1890. If the court had jurisdiction to appoint, the defendants have no right to shield themselves behind any irregularity in the manner of his appointment.

Returning to the matter of the receiver, however, we are well satisfied that in this particular case all question was removed by the appointment of that officer. Ordinarily a receiver is a mere officer of the court, who takes the custody of property for the benefit of the party ultimately proved to be entitled to it, and neither the title nor the

right of possession is changed by his appointment. *Union
Bank v. Kansas City Bank*, 136 U. S. 223 (10 Sup. Ct.
Rep. 1013). But, under § 2022 (Code of 1881), the court
was authorized, notwithstanding the stay of proceedings
pending the notice to creditors, upon the sworn application
of any creditor, to appoint a receiver to take possession of
all property of the debtor *for the benefit of all his creditors*.
There was here no question of holding for the party ulti-
mately shown to be entitled to the property. The petition
of the debtor conceded all the facts on his side, and the ap-
plication of the debtor showed the emergency justifying
the immediate sequestration of the property, and its devo-
tion to the beneficiaries named, viz., the creditors. The
order appointing a receiver was the creation of an equitable
execution in favor of each creditor for his proportion of
the proceeds of the estate, and the appointee, although
nominally a receiver, was to every intent an assignee. No
conveyance of property to either the assignee or the re-
ceiver was necessary under this statute, as in some statutes
of similar character, as for example the national bank-
ruptcy act of 1867 (*Hampton v. Rouse*, 22 Wall. 263), nor
did the law require a decree of the court to divest the title
out of the debtor, as have other laws, as *e. g.*, the national
bankrupt act of 1841. *Oakey v. Bennett*, 11 How. 44.

By § 2024, when the creditors had agreed upon an as-
signee, and a statement of their deliberations had been
filed in the clerk's office, the only thing the court did was
to fix the assignee's bond. Some order would, of course,
be natural and proper, but it was not prescribed and would
be necessarily informal, perhaps a mere approval of the
action of creditors. Sec. 2046 provided that from and
after his surrender the property of the insolvent should be
fully *vested* in his assignee; but it was not more fully vested
in the assignee than the property of an insolvent corpora-
tion is vested in a receiver under chap. 13, Code of 1881.

It seems to us that titles do not come in question in such cases. The assignee or receiver, under the court's orders, can dispose of titles, but where they are in the meantime makes no difference.

In *Lammon v. Giles*, the court appointed a receiver on the petition of the debtor, and the whole estate seems to have been wound up under his administration, a proceeding approved by the supreme court. We see no reason why the same course might not have been followed with perfect legality in this case, if no regular assignee had been appointed. When the receiver was appointed, he took the estate absolutely for the creditors, not to hold until an assignee could be appointed; and the property and all rights which would have come to an assignee, if the usual course had been followed, immediately ''vested'' in him.

It must follow that this assignee could maintain this action, and that the repeal of the statute was insufficient as a defense.

The respondents object to the complaint on the ground that wherein it alleges the transfer of real estate from husband and wife, it shows a mere transfer from one joint debtor to another. This point is made upon the theory that the complaint is framed under the view that the wives of the partners were in some sense the business partners of their husbands, so that a transfer from husband to wife would be merely the conveyance from one joint debtor to another. It is, of course, a general rule that where property is transferred by one joint debtor to another, this does not constitute such a fraud as would justify the interference of a court of equity, because the property is still subject to execution, and the title to said property is not in any way clouded by the transfer. But we do not read the complaint in this respect as the respondents seem to. The wives in this case were not members of the partnership, nor is it alleged that they were. They are the persons to

whom the partners have conveyed the legal title to what is alleged to have been community property. Such a conveyance would be good as between husband and wife, so as to vest the entire title in the wife as a gift. Or it might be an actual purchase by the wife. But as against creditors, either a gift or a purchase made with an intent to defraud creditors would be void as to creditors. The wives are not alleged to be joint debtors, nor are they sued as such. The legal title is what the assignee seeks to bring into the estate. The deeds outstanding appear to place the title where it ought not to be, and his action is a proper proceeding to clear the title of the clouds raised by these deeds.

The point raised in behalf of the respondent, Allen J. Gilmour, that the appellant has not replied to his allegations of fact showing good faith on his part in connection with the transactions between himself and one of the other insolvents, and that therefore his answer is to be taken as true and constitutes a complete defense, is not well taken. One of appellant's demurrers was addressed to his special defense based upon the repeal of the insolvent act of 1881, and the cause now stands with that demurrer undetermined. The appellant has not yet been called upon to reply to the affirmative defense, since parties are not obliged to plead piecemeal.

The objection taken in this case, that no statement of facts appears in the record, is unavailable. The statute does not provide for or require a statement of facts in an equity cause where the whole case has been determined upon pleadings. So also the objection that no bond has been given for costs cannot be sustained. The bond for $15,000 which was required by the court to stay proceedings covers the costs as well as the damages which the respondents might have recovered in case of appellant's failure to sustain his appeal. When the court is called

4—6 WASH.

upon under Code Proc., § 1408, to fix the amount of bond for a stay of proceedings, the plain implication of the stat-. ute is that the bond shall cover all the damages which accrue by reason of the stay, including the costs of the appeal.

The judgment dismissing the complaint is reversed, and the cause remanded.    The plaintiff's demurrer to the defense based upon the repeal of the insolvency law of 1881 will be sustained, and the cause will proceed in accordance with this opinion.

DUNBAR, C. J., and HOYT, ANDERS and SCOTT, JJ., concur.