[Filed May 19, 1890.]

## J. F. STOUT, RESPONDENT, *v.* WATSON & LUHRS AND GEORGE HERBERT, APPELLANTS.

ASSIGNMENT FOR THE BENEFIT OF CREDITORS DEFINED.—A voluntary assignment for the benefit of creditors implies a trust and contemplates the intervention of a trustee. When a creditor, under an agreement with the assignor to sell the property and to apply the proceeds to the payment of his own and other debts of his assignor and refund the surplus, he becomes a trustee and the transaction amounts to a voluntary assignment.

ASSIGNMENT—SALE.—Sales are transfers in the ordinary course of business; assignments commonly grow out of the embarrassment or suspension of business.

CASE IN JUDGMENT.—When H. & K. were about to be sued for a debt which they were unable to pay when it was due, made and delivered to the plaintiff a writing whereby they purported to transfer to him certain property which was nearly all

they possessed, and by the terms of the writing the plaintiff was to pay himself and the men who had been working for H. & K. about the mill, and the residue to be applied on the debt of T. & B.; *held,* that the same was an assignment for the benefit of creditors, and not being for the benefit of all the creditors of H. & K., the same was avoided by section 3173, Hill's Code.

APPEAL from Wasco county: J. H. BIRD, judge.

This is an action of replevin to recover certain specific personal property alleged to be of the aggregate value of $1,334.96 and for $466 damages for the wrongful taking and detention thereof. The plaintiff recovered a verdict for $1,037.93 damages, upon which judgment was entered, from which the defendants have appealed. The answer alleges in substance that the property in controversy at the time of said alleged taking was the property of T. A. Hudson and C. L. Kelsey, doing business as partners under the firm name of Hudson & Kelsey; that on the twenty-first day of October, 1887, Hudson & Kelsey were indebted to the defendants Watson & Luhrs in a large sum of money, and that they commenced an action in the circuit court of Wasco county against Hudson & Kelsey to recover the same, in which action a judgment was duly rendered and given in their favor and against said Hudson & Kelsey about the twentieth of December, 1887, for $569.30 and costs and disbursements taxed at $36.20; that during the pendency of said action and before judgment the plaintiffs duly caused a writ of attachment to be issued therein and placed the same in the hands of the defendant George Herbert, who was at said time the sheriff, for service, and that said sheriff, by virtue of said writ of attachment, on the twenty-fourth day of October, 1887, attached and seized all of the property in controversy, and after the entry of judgment, by virtue of an execution duly issued thereon, he duly sold all of said property and applied the proceeds on said execution, and that the same was insufficient to satisfy said execution.

*J. J. Balleray,* for Appellants.

*F. P. Mays,* for Respondent.

STRAHAN, J., delivered the opinion of the court.

The only questions presented for review on this appeal, material to be noticed, are presented by the instructions which the defendant requested at the trial and which were refused by the court. The plaintiff testified without objection, among other things, as follows: I know all about the property described in the complaint; on October 22, 1887, it belonged to Hudson & Kelsey; it was sold to me October 22, 1887; I believe I owned it on October 24th; I came by it by bill of sale given by Hudson & Kelsey; the bill of sale is in writing; it was transferred to me on the twenty-second day of October, 1887; on the morning of the twenty-second Mr. Hudson, accompanied by Mr. McAllister, came down to the mill; Hudson came into the engine room and called me out and gave me the bill of sale; I took it and read it; I asked him how much the indebtedness to the men amounted to; he told me he did not know exactly, but he thought about $650; he then said he wanted me to take the bill of sale and the property and pay myself and the men: I told him I would do it: he referred to the men in the mill; it is stated in the bill of sale; I did not know exactly who they were or how much was owing. After describing the property and giving other testimony not necessary to be noticed, the witness further testified that he had no other agreement except what was contained in the bill of sale, and that was all the agreement he ever had with Hudson, and that there was no agreement outside of the bill of sale. The writing called a bill of sale was then offered in evidence and is as follows:

"Know all men by these presents: That, in consideration of a large sum of money due him from us as wages for engineer in the saw-mill operated by us near Wyeth station, Wasco county, Oregon, and the further consideration of his assuming and agreeing to pay to the several workmen in said mill the wages due them by us, and the further consideration of his assuming and agreeing to pay to Tatum & Bowen, of Portland, Oregon, such portion of the amount due to them by us for machinery and material purchased by

us for use in connection with said mill as shall remain to him after paying the above-mentioned claims, we do hereby grant, sell, transfer and deliver unto John Stout, his heirs, executors, administrators and assigns, the following goods and chattels, viz: All the railroad cross-ties now at the said saw-mill, amounting to about 3,000; also all the lumber, amounting to about 30,000 feet; also all the slab wood, amounting to about 200 cords, and also all the saw logs, amounting to about 50,000 feet, and also all other material now at said mill. To have and to hold all and singular the said goods and chattels forever. And the said grantors hereby covenant with the said grantee that they are the lawful owners of said goods and chattels; that they are free from all encumbrances; that they have good right to sell the same as aforesaid, and that they will warrant and defend the same against the lawful claims and demands of all persons whatsoever. In witness whereof, the said grantors have hereunto set their hands this October 21, 1887.

"Witness:                          "HUDSON & KELSEY.
    "FRANK CLOUTMAN."

At the conclusion of the evidence the defendants' counsel asked the court to give these two instructions, which were refused and exceptions duly taken: "1. The written instrument introduced in evidence in this cause purporting to be a bill of sale from Hudson & Kelsey to the plaintiff is not and did not make an actual sale from Hudson & Kelsey to said plaintiff, but was an assignment to him for the benefit of creditors. 2. Under the evidence in this case, the plaintiff has shown no title to the property sufficient to sustain a recovery in this cause, and you should therefore find for the defendant."

These instructions present substantially the same question, and that is, whether the writing offered in evidence is a bill of sale vesting title to the property in controversy in the plaintiff or an assignment for the benefit of the creditors of Hudson & Kelsey.

1.    The appellants' contention is that the writing referred

to in the first instruction refused, is a voluntary assignment made by Hudson & Kelsey for the benefit of a part only of their creditors, and that not being for the benefit of all their creditors, it is void under the statute. Burrill on Assignments, § 3, says: "A voluntary assignment for the benefit of creditors implies a trust and contemplates the intervention of a trustee. * * * Assignments may be made to the whole body of creditors or to particular creditors or they may be of all or a part of the debtor's property; but unless a trust is thereby created by the assignor in favor of creditors, such instruments are not within the class of instruments known as assignments for creditors." Further: "And when the creditor undertakes, under an agreement with the assignor, to sell the property and apply the proceeds to the payment of his own and other debts of his assignor and refund the surplus, he becomes a trustee and the transaction amounts to a voluntary assignment." *Truitt* v. *Caldwell*, 3 Minn. 364; *Page* v. *Smith*, 24 Wis. 368. And it was held in *Murphy* v. *Caldwell*, 50 Alab. 461, that when a debtor made an absolute conveyance of all his property to one of his creditors in consideration of his grantee's paying certain other creditors, the same was a general assignment. The distinctions between an assignment and a sale are too marked to be misunderstood. Sales are transfers in the ordinary course of business; assignments commonly grow out of the embarrassments or suspension of business. A sale is usually for a consideration actually paid, or agreed to be paid, and created or passing simultaneously; an assignment is, in most cases, for a consideration already executed, as for a precedent or subsisting debt. Burrill on Assignments, § 4. These citations sufficiently show the nature of an assignment and the differences between an assignment and a sale; and applying what is laid down as elementary law by this author to the instrument offered in evidence in this case, there is no mistaking its character. It was made to one creditor for his own benefit and the other laborers in the mill with a residuary clause in favor of Tatum & Bowen.

The plaintiff was made trustee of the property conveyed, with power to convert it into money and pay his own debt, and the debts of the other creditors provided for in the assignment.   In addition to this, there had been no negotiations whatever between the plaintiff and Hudson & Kelsey before the instrument was executed.   In fact, the first notice the plaintiff had of the so-called purchase, Hudson came down and called him out of the engine room, explained to him the nature of the instrument and asked his consent thereto.   The action which resulted in a judgment against Hudson & Kelsey was then impending and they knew it. We therefore think the instrument under which the plaintiff claims title was an assignment and not a bill of sale.

2.   But a valid assignment passes the title to the assignee as effectually as a bill of sale, and such was the effect of the instrument referred to unless the same is void under the statute.   Section 3173, Hill's Code, provides: "No general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors shall be valid unless it be made for the benefit of all his creditors in proportion to the amount of their respective claim."   The evidence shows conclusively that Hudson & Kelsey were insolvent at the time they made this assignment; that is, they were not able to pay their liabilities as they matured in the ordinary course of business, and it tends very strongly to prove that the assignment was made in contemplation of insolvency.   Mr. Hudson testifies that at the time he made the instrument in question he knew that the plaintiffs were going to sue his firm, but he did not know that they were going to attach.   Watson & Luhrs' debt was due and their debtors had no money wherewith to pay it.   The obvious import of the transaction is that Hudson & Kelsey had become involved beyond their ability to pay, and knowing that Watson & Luhrs were about to endeavor to enforce the collection of their claim by law, H. & K. wished to give a preference to the laborers who had remained with them and assisted them in their business in the hope, and no doubt under the

promise, that their claims should be met. This instrument was executed in furtherance of that purpose, and, independently of the statute, it was a worthy one. Its object was to give the day laborer his wages; but, however honest the intent or worthy the purpose, an instrument executed in violation of the statute or contrary to its provisions must fail. The court has no power or discretion in such case. The two instructions above set out were correct statements of the law as applied to the facts of this case and should have been given. It is true they would have precluded recovery by the plaintiff, but that arose out of the inherent weakness of his case.

3. And this reminds us that at the close of the plaintiff's evidence the defendant moved for a non-suit, which was refused, to which an exception was taken. This motion should have been allowed. The plaintiff had no other evidence whatever of his title to the property in controversy except this assignment, which we have already indicated was void under the statute.

In this case it appears that the property in controversy was sold by Herbert as sheriff before the commencement of the action and the proceeds applied on the execution. None of the defendants being actually in possession of the property when the action was commenced, would replevin lie in any event? The question is not made in the record and we make no decision upon it. Wells on Replevin, § 134. So Watson & Luhrs never had possession of the property. The sheriff took it under their attachment and sold it for their benefit under a regular execution. Did that subject them to this action? Wells on Replevin, § 142.

The judgment will be reversed and the cause remanded to the court below with directions to sustain defendant's motion for a non-suit.