[No. 540.    Decided February 6, 1893.]

AUG. MANSFIELD, *assignee of Burrows. & Anderson, Appellant*, v. THE FIRST NATIONAL BANK OF WHATCOM, WASHINGTON, AND R. L. SABIN, *Respondents*.

ASSIGNMENT FOR BENEFIT OF CREDITORS— FRAUDULENT TRANSFER —RIGHTS OF ASSIGNEE — REPEAL OF STATUTE.

The insolvency law of 1881 was repealed and set aside in all its provisions by the assignment law of March 6, 1890 (Gen. Stat., § 935).

Where a debtor in failing circumstances, contemplating assignment, makes a chattel mortgage in fraud of his creditors, and subsequently makes an assignment for their benefit, his assignee is entitled to, and may recover, possession of the goods thus fraudulently transferred.

*Appeal from Superior Court, Whatcom County.*

*Bruce & Brown*, for appellant.

*Cole & Romaine*, for respondent First National Bank; *Cox, Teal & Minor*, and *Kerr & McCord*, for respondent R. L. Sabin.

The opinion of the court was delivered by

STILES, J. — On the 6th of January, 1891, the firm of Burrows & Anderson borrowed $1,000 from the First National Bank of Whatcom, to secure the payment of which they gave the bank their note due in sixty days. On March 10th they gave a renewal of the note, and on May 12th a second renewal note. The last named note would not have been due until July 14th. On May 23d, ascertaining that they were insolvent, they conferred with the bank officials and informed them of their condition, and that it would probably be necessary for them to make an assignment at an early day. Desiring to secure the bank, they proposed a chattel mortgage as collateral to their existing note. The bank, however, while accepting the proposition for the chattel mortgage, insisted upon a new note payable upon demand. This arrangement was carried out and a new note made and chattel mortgage executed and placed upon record upon the same day.

It is an indisputable fact that the execution of the chattel mortgage was a part of the plan entered into by both parties to devote the property of Burrows & Anderson to the payment of their debts by means of an assignment, but with the bank holding a security for the payment of its claim in full. The debtors remained in possession of the goods until the 25th day of May, conducting the business of selling goods in the usual manner, when, apparently somewhat to their surprise, the bank took possession of their entire stock of goods under its chattel mortgage, and commenced a foreclosure suit. This proceeding was taken about 10 o'clock in the forenoon, and between that time and 12 o'clock Burrows & Anderson executed to the appellant Mansfield an assignment of their property for the benefit of creditors, under the assignment law of March 6, 1890. On the 3d day of June, Burrows & Anderson filed

their answer to the complaint of the bank in the foreclos-
ure proceeding, admitting the facts stated in the complaint
to be true, and thereupon a decree was entered against
them, and the property directed to be sold.

On the same day the predecessor in interest of the re-
spondent Sabin commenced an action in the same court for
the recovery of a large sum against Burrows & Anderson,
upon claims assigned to him by sundry creditors of that
firm, and under allegations of fraud contained in the affi-
davit, caused a writ of attachment to be issued and placed
in the hands of the sheriff, who levied the same on the
stock of goods already in his hands under the execution
issued at the suit of the bank, upon their decree.

On the 12th day of June the assignee qualified by filing
a bond, and demanded possession of the property of the
sheriff; being refused such possession, he brings this action
to recover it, alleging that in the first place the chattel
mortgage to the bank was void because of its having been
procured as the result of fraudulent collusion between the
bank and the assignors; and, secondly, because the attach-
ment of Sabin was illegal and void under the statute.

The decree of the court below was against the assignee
and in favor of the bank, as entitled to a first claim, and of
Sabin as entitled to the second claim upon the proceeds of
the goods, which had been sold by agreement of the par-
ties. The view which the superior court took of the matter
was, *first*, that the chattel mortgage was not a fraud upon
the creditors; and, *second*, that the attachment, having been
levied upon goods not in the possession of the assignee, and
to the possession of which the assignee had no right because
they had been placed out of his reach by the act of the as-
signors in making the chattel mortgage, created a valid lien
in favor of Sabin.

The first proposition which we have to dispose of grows
out of the contention of the parties over the insolvency

law contained in the Code of 1881 (chapter 143), and the assignment law of 1890 (Gen. Stat., § 935). The appellant maintains that the act of 1881 has never been repealed; the respondents claim that the act of 1890 has swept it entirely out of existence. The point is not very material in this case, but it is suggested by both parties, and it would perhaps prevent future misunderstandings if we decide the matter now. We hold that the act of 1890 was intended to be a new law upon the same subject matter as that treated of in the insolvency law of 1881, and that, while there are some matters in the old law which are not necessarily obnoxious to any provisions in the new one, the entire subject was legislated upon in the new law, and the old one was necessarily repealed and set aside in all its parts.

But the practical question in this case is, whether the act of 1890 is anything more than an act to regulate common law assignments, and whether if a debtor has been guilty of fraudulent transfers looking to a future assignment of his property for the benefit of creditors, his assignee under this law can recover the property thus fraudulently transferred.

Upon the facts, as has been already indicated, we hold differently from the superior court upon the good faith of the bank mortgage. It was not a purchaser in good faith. The note which was secured by the mortgage was one substituted for the original note, which was in turn a renewal several times removed from the original loan. The terms of this note were different from those of its predecessor, inasmuch as it was made payable on demand, whereas the note for which it was substituted would not have been due until July. This change was made for no other purpose than to enable the bank at any sign of danger through the movements of other creditors to seize the property and retain it for its own benefit while the debtors were making a general assignment for the benefit of other creditors.

It has been a common method of treating such transactions to call the mortgage and the assignment one transaction, and to construe the two instruments together as though the assignor had made an assignment containing a preference, which the statute says shall not be valid.    But with all deference to the use of language which frequently occurs in the cases, they are not the same transaction, nor are the instruments one.

The assignee, at least ordinarily, has no privity with, or knowledge of, the mortgage, and all that the court, to which he is responsible, knows is the assignment.    The debtors in this case, it is pretty strongly hinted in the record, did not intend to make an assignment unless it should be absolutely necessary.    They claim to have relied upon some promise made by the bank to the effect that the foreclosure of the mortgage should be managed in such a way as that the property should be sold in bulk, and the possession of it returned to them for disposal in the ordinary course of their previous business; and it was not until they found the bank disregarding this alleged understanding and taking possession of the goods, that they finally made up their minds to execute the assignment to Mansfield.

But whether these are to be construed as one instrument, and the execution of them as one transaction, or not, the fact remains that the law seems to have little regard for the one construction or the other.    It is entitled "An act to secure to creditors a just division of the estates of debtors who convey to assignees for the benefit of creditors," and if the purpose of the act can be worked out by any reasonable construction of its provisions, it is the duty of the courts to secure that object without regard to technicalities which have no substance.    The position taken by the respondents is, that notwithstanding the mortgage may have been conceived and executed in fraud of this law, the mortgagee having taken possession of the property before

the assignment was made, the assignee has no power to move against the mortgage on the ground of its fraudulent character, and can, therefore, acquire no possession of the property covered by it.

If this law is no more than an act to regulate common law assignments, the point must be conceded to be well taken. A similar law exists in Oregon and Iowa, and in those states it has been held generally that the assignee stood in the shoes of the debtor and could not recover property conveyed by him in fraud of creditors before the assignment. *Hahn v. Salmon*, 20 Fed. Rep. 801; *Dawson v. Sims*, 14 Or. 561 (13 Pac. Rep. 506); *Van Patten v. Burr*, 52 Iowa, 518 (3 N. W. Rep. 524); *Prouty v. Clark*, 73 Iowa, 55 (34 N. W. Rep. 614).

In each of those states, however, there is some difference between the statutes passed upon and our act of 1890. In Iowa there is no discharge of the debtor, and in neither state does the court or creditors have any power to change .the assignee. In both the declaration of the first section of the act is substantially the same as that of our own law, viz.:

"No general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors, shall be valid unless it be made for the benefit of all his creditors in proportion to the amount of their respective claims."

And in both there is a section substantially the same as our § 2753, viz.:

"Any assignee as aforesaid shall have as full power and authority to dispose of all estate, real and personal, assigned, as the debtor had at the time of the assignment, and to sue for and recover, in the name of such assignee, everything belonging or appertaining to said estate, and generally to do whatever the debtor might have done in the premises."

This court, in *Traders Bank v. Van Wagenen*, 2 Wash.

172 (26 Pac. Rep. 253), passed upon the substance of this question as involved in the insolvency law of 1881, and unless the statute now in review has some materially different elements, we should be inclined to maintain the principles therein announced. But upon examination we find that the only material difference is that, under the old law, the proceeding was commenced by petition filed by the debtor under which an order was made vesting the debtor's property in an assignee appointed by the creditors, at a meeting called under the order of the court, while under the act of 1890, the deed of the assignor conveys his estate directly to the assignee, who has no power to proceed until he has filed his bond and inventory, and thus brought himself within the jurisdiction of the court.

The ultimate result under each law is the equal distribution of the property of the debtor, and his discharge from his liabilities if his acts shall appear to have been uncolored by fraud. The declaration of the first section of the act, that no general assignment shall be valid unless made for the benefit of all creditors in proportion to the amount of their respective claims must be limited as we view the act to —*First*, Preferences; and, *second*, to the effect on the debtor brought about by the denial of his petition for discharge. If it were not so, every assignment which is made would be in continual jeopardy, so long as all property involved in it is undistributed, by the discovery of some fraudulent act perpetrated by the assignor before the assignment was made.

Section 2650 provides that the debtor may be summoned upon the application of the assignee, or any creditor, to submit to an examination for the purpose of discovering whether or not all his property has been listed in the inventory, and "the court may compel the delivery to the assignee of any property or estate not embraced in the assignment." But, according to the theory of the respond-

ents, not only would the assignee be powerless to reclaim such property, but the very fact that the assignor had fraudulently placed such property out of his hands for the purpose of depriving creditors of the benefit of its distribution by the assignee would avoid the whole assignment and open the way to any creditor to prefer himself at the expense of the others.

Even in Iowa, a case of this kind occurring in *Schaller v. Wright*, 70 Iowa, 667 (28 N. W. Rep. 460), the court held, notwithstanding *Van Patten v. Burr*, that the assignee could recover it.

An illustration is contained in the body of the statute itself which, it seems to us, must overcome the claim of the respondents that the assignee could go no farther than the property actually conveyed to him, or that discovered under the assignor's control though not mentioned in the assignment. It is provided in § 2741 that such an assignment shall have the effect to discharge any and all attachments on which judgment shall not have been taken at the date of the assignment. Now, excepting for one ground of attachment, viz., non-residence, attachments in this state are granted only upon a showing of some fraud on the part of the debtor, the gist of which is, that he is disposing, or about to dispose, of property with intent to defraud his creditors. But if in a case where fraud is the basis of an attachment lien the assignee is permitted to step in and dissolve an attachment, and thus deprive innocent creditors of the involuntary lien which other portions of the law give them, there can be but small reason assigned why, in a case where the debtor has disposed of his property fraudulently by giving a voluntary lien, with possession, the assignee should not be permitted to retake that property.

Upon consideration of § 2753, however, we think a better rule is laid down in *Pillsbury v. Kingon*, 33 N. J. Eq. 287, than is found in either of the cases cited by the

respondents. That was a case like this, where an assignee was suing for the recovery of property mortgaged by his assignor to third persons in fraud of the assignment law. The court there reviews the whole subject of the rights of an assignor under statutes governing assignments for the benefit of creditors. The New Jersey statute bears the same title as ours, and the court, in reviewing the thirteenth section, which is the same as our § 2753, speaks as follows:

"Considering that the assignment creates a trust for the benefit of all the creditors of the assignor, and that the legislative purpose was to secure an equal and just division of the estate of the debtor among his creditors, a construction less comprehensive will defeat the legislative purpose. In virtue of the trust so created the assignee becomes the representative of and actor for creditors, and his powers should be so construed as to enable him to carry into full effect the purpose which the statute designed. In the English insolvent acts, under which assignees are allowed to avoid the fraudulent grants and conveyances of the debtor, the power of the assignee to sue in his own name is granted 'for the recovery, obtaining and enforcing any estate, effects or rights of such prisoner'—language, in legal effect, identical with that contained in the thirteenth section of our assignment act. In *Garretson v. Brown*, 2 Dutch. 425, Justice POTTS construed this section as enabling the assignee to sue for property fraudulently conveyed away by the debtor, and to recover it for the use of the creditors who should present their claims."

The court then overrules *Van Keuren v. McLaughlin*, 21 N. J. Eq. 163, and sustains the right of the assignee to sue to avoid the fraudulent mortgage. The case above cited is a review of the same reported in 31 N. J. Eq. 619, where the vice chancellor laid down the opposite doctrine. These two overruled cases are both cited in the opinion of the court in *Hahn v. Salmon*, 20 Fed. Rep. 801, in support of the view adopted.

The case of *Benham v. Ham*, decided by this court, *ante*,

p. 128, is confidently cited by respondent Sabin in support of his attachment; but while some language was used in the opinion in that case which, taken alone, might be ground to infer that if the mortgage had not been sustained, the attaching creditor in that case would have been allowed to retain his lien upon the property in the hands of the assignee, the judgment there directed shows that the whole question of the attachment was avoided by the finding that the chattel mortgage was a *bona fide* transaction, and that there was, therefore, no ground for the allegations of fraud under which the attachment was issued.

The subsequent case of *Hamilton Brown Shoe Co. v. Adams, ante,* p. 333, is more nearly in point, and it was therein held that the property reaching the hands of an assignee was *in custodia legis,* and could not be taken from him by the attaching creditor on the ground that the assignment was fraudulent by reason of acts committed by the assignor before the assignment.    There can be no difference between that case and this so far as the rights of the assignee are concerned, although here the assignee had not been able to reduce the property assigned to his possession at the time the attachment was levied.    He was entitled to its possession, and only needed the interference of the court in his behalf to secure it.

It follows from the foregoing that the judgment of the court below must be reversed, and the cause remanded with directions to that court to enter judgment in favor of the appellant for the proceeds of the goods, to be distributed by him in accordance with the law governing assignments.

DUNBAR, C. J., and ANDERS and HOYT, JJ., concur.

## ON PETITION FOR RE-HEARING.

STILES, J.—Criticism is made of the opinion in this case because it is therein said that the Oregon statute contained

no provision for the discharge of the debtor or for change
of the assignee.    This will have to be qualified.    The Iowa
statute dates back to 1857, and perhaps earlier.    We have
not the session laws of Oregon which contain the enact-
ments in that state upon this subject.    But from the notes
to 2 Hill's Code, chap. 28, we find that in 1878 the Iowa
statute seems to have been adopted in Oregon *verbatim*,
and this statute, without any provision for discharge of the
debtor or change of the assignee, continued until 1885,
when amendments were adopted which made the Oregon
statute *verbatim* with our own statute of 1890. *Hahn v.
Salmon*, and all the cases in the Oregon supreme court, were
based upon the old law, except *Dawson v. Sims, supra*, and
*Helm v. Gilroy*, 20 Or. 517.

In *Jacobs Bros. v. Ervin*, 9 Or. 52, while the court
doubted whether, under the statute of 1878, an assignee
could move to set aside an executed transfer made by the
debtor in fraud of creditors; yet, when the debtor had made
to one of his creditors a chattel mortgage, which was held
to have been fraudulent as to other creditors, the assignee
having obtained possession of the mortgaged chattels was
held to represent creditors far enough to enable him to de-
fend against a foreclosure.    The decision in *Gammons v.
Holman*, 11 Or. 284, was to the effect merely that an as-
signee could not attack the possession of one who had re-
ceived personal property from the debtor in good faith as
a security for advances.    It was there said that the as-
signee took the legal title, and nothing more, and acquired
just such rights in the property as his assignor had, and
none other.    No question of a creditor's rights was then in
issue; indeed, no creditor could have successfully attacked
Holman & Co., for the reason that there was no fraud.
*Helm v. Gilroy*, 20 Or. 517, is substantially to the same
effect as *Gammons v. Holman*.    In *Dawson v. Coffey*, 12

Or. 514, the court refused relief to a creditor who had re-covered a judgment at law and had an execution returned unsatisfied, and from what was said on page 518, we should infer the view of the court to have been that the proper proceeding was for the creditor to prove his claim and then move the assignee to recover the value of the property fraudulently made away with. In *Dawson v. Sims, supra*, the sole question was whether there was jurisdiction to maintain an equitable action to aid an attachment lien, and it was resolved in the affirmative. This case was heard under the amendments of 1885, but there was no discussion of the law as a whole, or of the standing of an assignee as between the debtor and his fraudulent grantees on the one side and creditors on the other. In *Stout v. Watson*, 19 Or. 251, there never was any intention to make an assignment under the statute, but the court held that what had been done was forbidden by the statute.

It is possible that the decisions in the State of Oregon may have been somewhat influenced by the fact that until 1885 the statute was rather a regulation of the common law assignment, and that the influence may continue in the future, notwithstanding the new features which have been added to it, which have not yet been there considered. But here we have set up the statute as a whole, substituting it for an existing insolvent law which it has repealed by implication; and carrying with it, as it does, the two features of entire control over assignees and discharge of the debtor. We are unable to see how its evident purpose can be carried out without giving to the creditors, through the court and the assignee, the right to assail fraudulent conveyances and bring into the administration all that ought in equity and good conscience to be distributed. In no other way will creditors be able to "secure a just division of the estates of debtors who convey to assignees." Any

other method would simply result in a scramble among creditors, with the very preferences which the statute expressly denounces.

Re-hearing denied.

DUNBAR, C. J., and HOYT and ANDERS, JJ., concur.