Argued October 22, affirmed December 10, 1918.

## ST. HELENS QUARRY CO. *v.* F. T. CROWE & CO.
### (176 Pac. 427.)

**Assignments for Benefit of Creditors—Construction of Instrument.**
1. Instrument *held* to be bill of sale of business and assets of a partnership, and not an assignment for benefit of creditors, in view of subsequent acts of parties.

**Sales—Validity—Consideration.**
2. It does not invalidate sale of assets of business that consideration thereof shall be paying of all debts of business; and that a limit is placed upon such amount makes no difference.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.

This is an action to recover upon a contract executed for the benefit of a third party. In 1912 the partner-

ship of Vom Cleff & Lundy was engaged in the general business of supplying building materials in the City of Portland, and for the use of their business had a lease on a store building situated on Broadway and 33d Streets for a warehouse, and on a dock at the foot of Linn Avenue, Sellwood. During the month of October of that year the partnership was indebted to over fifty creditors in the sum of over $12,000. They had upon their books in accounts receivable $11,711.76, and on October 8, 1912, had in cash on hand $1,047.82. The principal creditor of said partnership was the defendant F. T. Crowe & Co., who had a claim in the sum of $5,990.40. Among the other creditors were the plaintiff, St. Helens Quarry Co., and the assignor of the plaintiff, Hawthorne Dock Co. On the 8th day of October, 1912, an agreement of writing was entered into, in words and figures as follows:

"This agreement, made and entered into this 8th day of October, 1912, by and between Herman Vom Cleff and J. W. Lundy as partners under the firm name of Vom Cleff & Lundy and as individuals, as parties of the first part, and F. T. Crowe & Co., a Washington corporation legally doing business in the city of Portland, Oregon, as parties of the second part.

"WITNESSETH: That for and in consideration of the sum of One Dollar paid to each of the parties hereto by the other, receipt of which is hereby acknowledged, and in further consideration of the covenants and agreements herein contained, the said parties hereto covenant and agree with each other as follows, to wit:

"FIRST: The parties of the first part agree to set over, transfer and assign to the party of the second part any and all bills or claims outstanding in their favor or to either of them and owed by third parties on account of their business as building material dealers, including all moneys now standing in any bank in the name of the said partnership or in the name of said partners as individuals, or otherwise, for and on ac-

count of said partnership and also including a certain lease on the store building situated on Broadway, near 33rd Street, in the city of Portland, Multnomah County, Oregon, known as Vom Cleff & Lundy's Warehouse.

"Second: The party of the second part agrees to take over all the bills and claims outstanding, as set forth in paragraph one herein, and any and all assets of the said parties of the first part, as a partnership.

"Third: The party of the second part agrees to take care of and dispose of all claims or bills outstanding in favor of third parties against the parties of the first part, as a partnership, it being expressly understood and agreed that the said bills or claims shall consist of only those arising out of or by reason of dealings with the parties of the first part, as a partnership, engaged in supplying building materials, and not otherwise.

"Fourth: It is agreed that the obligations on the part of the parties of the first part, herein mentioned in the preceding paragraph, do not exceed the sum of $12,764.47, and the said parties of the first part further agree that if there are any claims or bills presented exceeding said sum, that they and each of them will take care of and dispose of the same and be held solely responsible therefor, it being the intention of this agreement that the party of the second part shall not be held responsible or liable for any sum exceeding said amount.

"Fifth: In case the party of the second part is successful in collecting the sum of money from said bills and claims so outstanding in favor of the parties of the first part exceeding the total sum of the indebtedness of the parties of the first part on account of their partnership business, the said party of the second part agrees to turn over and deliver to the parties of the first part any and all sums in excess thereof.

"Sixth: And the parties of the first part, and each of them, as a partnership and as individuals, covenant and agree that in case the amount of money derived from the collection of the bills and claims outstanding in their favor from third persons, by the party of the

second part herein by the use of reasonable diligence, shall be less than the total bills or claims outstanding in favor of third parties against the parties of the first part on account of said partnership business, that in that event they and each of them, their heirs and assigns, will be jointly and severally responsible for the total sum of said deficit, and agree to pay said deficit to the party of the second part. And the said parties of the first part further agree that they and each of them will save and keep harmless the said party of the second part on account of any litigation that may arise by reason of the indebtedness on the part of the parties of the first part on account of their partnership business, as aforesaid.

"In Witness Whereof, the parties hereto have caused this instrument to be executed in duplicate this —— day of October, 1912.

"Vom Cleff & Lundy.

"Executed in presence of:   By J. W. Lundy. (Seal)
"R. W. Ketchum.                    J. W. Lundy.   (Seal)
"L. P. Thornton.                    H. Vom Cleff.  (Seal)
"F. T. Crowe & Co.
"By F. W. Farrington.  (Seal)
"Statutory Agent and Attorney in Fact for Oregon."

In pursuance of said contract defendant took over the accounts and bills receivable of Vom Cleff & Lundy, took over the lease of the warehouse and entered into possession of the same, and took possession of the cash on hand of said partnership, and proceeded to collect in said accounts. Thereafter, at what exact time does not appear in the record, said defendant paid in full the claims of thirty-five of the creditors, aggregating $955.66, and from time to time made payments upon the claims of sixteen creditors, including themselves, as the funds were collected in. It appears that the last payment made to plaintiff, St. Helens Quarry Co., was made on February 28, 1914, and that the last

payment made to the Hawthorne Dock Co. was made on August 27, 1913. Plaintiff commenced suit upon the contract on July 1, 1916, alleging that on plaintiff's claim there was due and remaining unpaid the sum of $2,003.08, and on the claim of the Hawthorne Dock Co. assigned to plaintiff, the sum of $247.67.

The defendant answering set up that the contract herein set forth was an assignment for the benefit of creditors and not a bill of sale, and that defendant had taken possession of said property as trustee for the benefit of said creditors, and had administered the same with due care; had paid the small creditors in full, the larger creditors *pro rata,* and had accounted for all of the moneys received from the assets of Vom Cleff & Lundy. The lower court construed the contract to be an absolute promise on the part of the defendant to pay the debts of Vom Cleff & Lundy up to $12,764.47, and submitted to the jury the question as to whether the plaintiff St. Helens Quarry Co. or the Hawthorne Dock Co. had understood the contract between Vom Cleff & Lundy and the defendant to be an assignment for the benefit of creditors, instructing the jury in effect that if said plaintiff or the Hawthorne Dock Co. had construed said contract to be a transfer of the property to defendant to be disposed of and distributed *pro rata* among the creditors, and had adopted that construction of it and acted under it knowing the contract and knowing its terms, that plaintiff and its assignor, Hawthorne Dock Co., or either of them, would not now be allowed to place a different construction upon said contract.

It appears that Vom Cleff & Lundy entered into an arrangement with the plaintiff in 1912, whereby plaintiff placed certain machinery on the dock at the foot of Linn Avenue, and erected a derrick on said dock.

Under arrangements with the partnership business the use of the machinery and appliances owned by the plaintiff would be offset by the use of the dock, and the expenses of the operation of said dock and the transportation of building material across the same and delivery of said material, would be shared equally by plaintiff and the partnership, and the profits thereof were divided equally. Under this arrangement the partnership became indebted to plaintiff for the operation of said dock in the sum of $899.99, which claim is included in the total recovery sought. Defendant contended on the trial below that this indebtedness did not come within the scope of the contract entered into between the partnership and defendant, in that it was not a debt incurred by the partnership by reason of dealings of said partnership while engaged in supplying building materials. The court refused to give the following instruction submitted by defendant:

"You must further find before plaintiff can recover that the claim of plaintiff and the Hawthorne Dock Company arose out of dealings with Vom Cleff & Lundy, as a partnership engaged in supplying building materials. This means that the amount claimed to be due must be for building materials sold to Vom Cleff & Lundy as a partnership. Indebtedness that arose in any other manner cannot be included. You must therefore disregard the item of $899.99 included in plaintiff's claim, being money claimed to have been advanced to Vom Cleff & Lundy in the operation of the dock on Linn Avenue."

The jury brought in a verdict in favor of the plaintiff on the first cause of action for $1,906.06, and on the second cause of action for $231.53, and defendant appeals.                                    Affirmed.

90 Or.—19

For appellant there was a brief over the names of *Mr. William D. Fenton, Mr. Harry L. Raffety, Mr. John G. Veatch* and *Mr. David C. Pickett,* with oral arguments by *Mr. Fenton and Mr. Raffety.*

For respondent there was a brief over the names of *Mr. George W. Gearhart* and *Mr. Donald M. Graham,* with an oral argument by *Mr. Gearhart.*

OLSON, J.—Several assignments of error were made in the bill of exceptions, but these appear to be waived by the defendant in its brief, excepting as to two points:

First. Is the agreement upon which plaintiff's right of action is based a bill of sale giving plaintiff a right of action on the promise, or an assignment for the benefit of creditors?

Second. Is defendant liable for the amount due from Vom Cleff & Lundy on account of the operation of the Sellwood dock?

The contract entered into between the partnership and defendant is contradictory as to its terms. The first four paragraphs of said contract constitute a complete bill of sale of all the assets of the partnership to the defendant, with an obligation definite and certain on its part to pay for the same by paying the debts of said partnership arising out of the partnership business up to the amount of $12,764.47. The assignment is absolute in form and the promise is definite as to payment. The fifth paragraph of said contract, however, provides in effect that if the collections from the accounts receivable exceed the total sum of the indebtedness, the overplus thereof shall be paid to the partnership. This paragraph constitutes one of the badges of an assignment for the benefit of creditors in that the reversionary interest in the proceeds is

retained by the assignor thereof.   The next paragraph of the contract sets forth in effect that said partnership, and the members thereof individually, shall be liable for any deficit occurring by reason of bills and claims outstanding in favor of the partnership not being sufficient to pay the debts.   This paragraph is a badge of a bill of sale in that it is a guaranty of the consideration of the transfer.   It is necessary therefore to determine what was the real intent of the parties when this contract was made.

The answers of the defendant clearly set forth that at the time of making this contract the accounts receivable of Vom Cleff & Lundy, together with the cash on hand, all of which were by this contract transferred to defendant, exceeded in amount the sum of $12,764.47, named in such contract as the limitation of the debts contracted to be paid by defendant.   This does not take into consideration the transfer of the lease of the warehouse assumed by defendant, nor the business and goodwill of the partnership, nor some other personal property of the partnership not yet disposed of.   The partnership was engaged in the same general line of business as the defendant, and the business and the goodwill of said partnership, or at least the removal of a competitor had some value.   The acts of the defendant in carrying out this contract are the most significant.   Nowhere in the contract is there any provision indicating that the creditors are to be divided into two classes, one of them preferred creditors and the other class to share *pro rata* what is left; yet it appears from the answers of defendant that thirty-five creditors, whose bills aggregate $955.66, were paid in full and that the remaining creditors had received sundry payments on their claims, but from the pleadings it does not appear that any regular sys-

tem was adopted in the paying of *pro rata* dividends upon the claims of those creditors who were not paid in full.   An inspection of the record shows that upon the claim of the St. Helens Quarry Co., amounting, as claimed by said company, to $3,312.99, or, as admitted by the defendant, $2,356.30, payments were made after the entering into of this contract as follows: November 30, 1912, $36.05; December 26, 1912, $1,000; April 23, 1913, $250; August 30, 1913, $100; and on February 28, 1914, $20.71.   That on the claim of the Hawthorne Dock Co. assigned to plaintiff, amounting to $479.79 as claimed by said company, or $460.69 as claimed by defendant, the following payments were made: October 30, 1912, $138.21; November 30, 1912, $6.25; December 11, 1912, $46.07; March 30, 1913, $34.70, and August 27, 1913, $23.03.

It is apparent from an examination of these payments, as compared with the amount of the debts upon which they are paid, that no system was adopted in regard to the making of said payments, especially as to a uniform date of payment or a uniform rate of payment, excepting the last payment made upon said account.   It would seem, therefore, that at the time of making said contract defendant understood it to be an absolute promise upon its part to purchase the assets of the partnership and to pay the debts of said partnership up to $12,764.47; that in pursuance of said intention of the defendant it paid the small creditors in full and made such other payments upon the larger creditors as convenient, until it became apparent that a substantial portion of the accounts receivable of said partnership would probably become worthless.

1, 2.   There is no evidence in this case upon the record submitted here showing that the defendant notified

the other creditors that it had taken an assignment of the assets of said partnership for the benefit of all the creditors; nor does it appear that they were consulted at any time about the paying in full of the smaller creditors nor about the disposition of the assets.   It is very significant that defendant in selecting the thirty-five creditors to be paid in full did not select the thirty-five smallest for the claim of one of the creditors so paid in full was larger than the claim of any of four creditors upon whose claim a *pro rata* distribution is sought to be made.   To hold that this contract was an assignment for the benefit of creditors would be to disregard the positive provisions of three sections of the contract, because one section of said contract is inconsistent therewith.   A sale is not invalid because the exact amount of the consideration is not contained in the bill of sale.   A stock of goods can be purchased to be paid as per the inventory thereof. It does not invalidate the sale of the assets of the business that the consideration thereof shall be the paying of all the debts of the business, and the fact that a limit is placed upon such amount can make no difference.

It is admitted by both the plaintiff and defendant in their briefs that an action lies in this state by a third person on a contract made for his benefit, therefore, it is not necessary to consider this further or cite authorities in support thereof.   This contract is clearly made for the benefit of plaintiff and all other creditors of the partnership, and the consideration is ample to support it in an action at law: *Feldman* v. *McGuire,* 34 Or. 309 (55 Pac. 872).

The plaintiff contends strenuously that this case is governed by *Stout* v. *Watson,* 19 Or. 255 (24 Pac. 230), in which a debtor transferred certain property to a

creditor in consideration of a sum due such creditor, and in further consideration of such creditor paying in full certain labor claims and applying any amount left over on the sale of the property transferred upon the claim of another creditor. The property transferred was attached by still another creditor and sold on sheriff's sale and suit was brought by the transferee under the contract for the recovery of the value of the property from the sheriff. The court held this contract to be an assignment for the benefit of creditors and not a bill of sale, but it is apparent that this case presents a different situation. In the case at bar there was a positive personal obligation to pay debts up to a certain definite amount, which the verdict of the jury has found to be the entire amount of the debts of the assignor. In the *Stout* v. *Watson* case, 19 Or. 255 (24 Pac. 230), there was no attempt to enforce the contract as between the parties thereto. The action brought was not against the assignor but against third parties, whose rights accrued entirely outside the contract, nor do we have—as in this case—a course of action upon the part of the vendee which is inconsistent with the idea that the contract was intended as an assignment for the benefit of creditors.

As to the second point raised by defendant the only evidence before us is to the effect that the arrangement between the St. Helens Quarry Co. and Vom Cleff & Lundy in regard to the use of the dock at the foot of Linn Avenue, shows that the arrangement was for the use of said dock for the handling of building materials. The partnership had the lease upon said dock and was necessarily obligated for the expense and rental thereof. The plaintiff put in the use of certain machinery and appliances and building materials were handled over said dock, the expenses and profits to be

shared equally by the plaintiff and defendant. There is no dispute as to the facts. The instruction requested by defendant was peremptory in requiring the jury to eliminate this claim of $899.99 from consideration in this case. If the instruction had submitted to the jury the question as to whether or not the operation of the Linn Avenue dock was within the scope of the partnership dealings in building materials there might be some question, but the instruction as submitted was properly refused.    AFFIRMED.

McBRIDE, C. J., and BEAN and BURNETT, JJ., concur.