## HOOPER *v.* STUART.

HUSBAND AND WIFE; ADVERSE POSSESSION; WIDOW, ENTRY BY; CLOUD ON
TITLE; ADMISSIONS.

1. Where a widow enters upon and claims the ownership of land in her
husband's possession at the time of his death, but to which he had
no record title or title by adverse possession, and continues in pos-
session thereof for over thirty years under claim of ownership, her
entry upon the property cannot be said to have been in aid of her

right of dower and her possession to have been in subordination to the rights of her husband's heirs; and her possession under claim of title having been continued for more than the statutory period, she is entitled, in a suit in equity by her against such heirs at law, to a decree declaring the legal title to be vested in her by adverse possession.

2. In such a case, loose expressions in the pleadings and testimony, used in a popular sense and claimed by the defendants to be admissions by the complainant that her husband was the owner of the property during his lifetime, will not be allowed to contravene the undoubted tenor of the record evidence, especially when, properly understood, they are not inconsistent with it.

No. 1382.    Submitted March 23, 1904.    Decided April 5, 1904.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity to establish title by adverse possession to certain land.

*Reversed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a decree of the supreme court of the District dismissing a bill in equity filed under the statute to establish title by adverse possession.

The property in controversy is part of lot 9, in square 345, in this city. In and previously to the year 1857 the record title was vested in one Donald Stuart; and, since his death in or about that year, that record title has remained vested in his heirs at law. On July 7, 1857, his widow, Mary M. Stuart, apparently laboring under a very common misapprehension that the property belonged to her as his widow, sold it and made a deed of conveyance of it to her brother, Alexander Tait, and the latter entered into possession and erected a building on the lot. The money for the purchase seems to have come in whole or in part from Tait's wife, Victoria Tait, afterwards Victoria Hough, the original complainant in this suit. Alexander Tait and Victoria Tait, his wife, occupied the property until his death on December 2, 1870. He left no children, and his heirs at law are his brothers and sisters or their descendants.

Under a similar misapprehension as that which possessed Mrs. Stuart, which was strengthened by the fact that the money which her husband had paid for the lot had come in whole or in part from herself, Mrs. Victoria Tait assumed that the property became her own upon the death of her husband, and remained in possession of it and so continued to remain, claiming it as her own until her death in the year 1902. None of the heirs of Alexander Tait had any share or part in her possession. Meanwhile she remarried, her second husband being one John M. F. Hough, by whom she had two children, a son, Edward H. Hough, and a daughter, Mary E. Hooper. To the latter she made a deed of conveyance of the property on April 23, 1902, a little before her death; and this suit, which was originally commenced by Mrs. Hough herself on October 12, 1900, was thereupon revived in the name of Mrs. Hooper.

The bill was filed against the heirs and representatives, known and unknown, of Donald Stuart, and against the heirs and representatives, known and unknown, of Alexander Tait, to procure a decree vesting a good fee simple title in the complainant, Victoria Hough. There was afterwards an amendment of the bill and then, as already stated, a bill of revivor in the name and for the benefit of Mary E. Hooper. Some of the defendants answered, and against the others there was process by the way of publication. Of those who answered some who were among the heirs and representatives of Alexander Tait, admitted the claim of the complainant; others of the defendants contested it.

In the testimony that was taken it was developed that ever since the death of her first husband, Alexander Tait, the complainant, Victoria Hough, had always claimed the property as her own; that the only property which Alexander Tait owned, or claimed to own, at the time of his death, was the lot and house here in controversy, and an unimproved lot on P street in this city; that no dower was ever assigned to the widow; that unfriendly relations existed between her and the heirs almost since the time of her husband's death; that in 1874 a suit in equity had been instituted in the supreme court of the District for the sale of the P street property, the suit being in the name of the

widow, then become Mrs. Hough, against the heirs of Alexander Tait; that in this suit, on the motion of Mrs. Hough's solicitors, leave was granted to amend by including the property here in controversy; but that Mrs. Hough, when she was informed of this, objected to it, as she claimed this property as her own, and the proposed amendment was never made; and that no taxes had been paid on the property since the death of Alexander Tait. In the course of the proceedings the following stipulation, which is deemed of importance in the case, was entered into between the counsel for the parties, or such of them as had appeared:

"It is hereby stipulated and agreed between the various parties to this cause, by their respective solicitors, that at the time of the death of Alexander Tait the only improved property which he owned was the property involved in this suit; that he lived in this property with his wife at the time of his death; that his said wife continued to live therein until the time of her death; that no dower was ever assigned to the said widow; that the heirs of Alexander Tait have never been in possession of the said property; that at the time of the death of Alexander Tait he owned one unimproved lot which was sold under partition proceedings in the equity cause heretofore introduced in evidence, and that the complainant in the bill of revivor, Mary E. Hooper, is now in possession of the property involved in this suit; that the deed hereto attached is the deed called for by defendant's solicitors at the taking of testimony on behalf of Mary E. Hooper, and is the deed from Victoria H. Hough et vir to Mary E. Hooper, a certified copy of which has been introduced in evidence. It is further stipulated that defendants withdraw their objection to the form of service by publication herein."

Much of the testimony is devoted to an attempt to show that the defendants had notice of the complainant's claim of adverse possession, but the proof of actual notice is exceedingly unsatisfactory.

The court below at the hearing dismissed the bill, on the ground that a widow cannot hold adversely to the heirs of her husband without a clear and positive disclaimer of their right and title, and the assertion of an adverse right in herself brought

to the notice of the heirs; and that there is no sufficient evidence in the case that notice of the adverse character of the complainant's possession was brought to the notice of the heirs. From the decree of dismissal the complainant has appealed.

*Mr. J. J. Darlington, Mr. Harry G. Kimball,* and *Mr. William Henry White,* for the appellant:

1. A widow may acquire title by adverse possession in this District, as against the heirs of her deceased husband. *Hogan* v. *Kurtz,* 94 U. S. 773.

2. Eight of the defendants, representing two fifths of the title, admitted in their answers under oath that they knew of Mrs. Hough's claims to ownership, and had known of them during all of the period of her possession. As to these defendants, therefore, notice is proved, and it was error in the lower court to dismiss the bill as to these defendants. *Rose* v. *Mynatt,* 7 Ycrg. 30; *Jameson* v. *Shelby,* 2 Humph. 198; *McGehee* v. *Lehman,* 65 Ala. 316; *Emerson* v. *Atwater,* 12 Mich. 316.

3. As to the others, the circumstances connected with equity cause No. 3956, especially in connection with the failure of any of the defendants to deny that they had notice of Mrs. Hough's claim of ownership, a fact peculiarly within their knowledge, are conclusive proof of actual notice to all the heirs in 1874, or twenty-six years before this present suit was instituted. *Clifton* v. *United States,* 4 How. 242, 248; *R. R. Co.* v. *Paine,* 119 U. S. 565; *Runkle* v. *Burnham,* 153 U. S. 225; *Com.* v. *Webster,* 5 Cush. 295, 316, Approved in *Graves* v. *United States,* 150 U. S. 120.

4. As to when notice must be brought home to the party before any foundation can be laid for the operation of the statute of limitations, see *Zeller* v. *Eckert,* 4 How. 289. Notice of claim of title and the hostility of possession may generally be presumed from the character and duration of the possession, and it is immaterial whether the owner knows of the disseisin or not. *Holtzman* v. *Douglas,* 168 U. S. 278; *Davis* v. *Coblens,* 174 U. S. 719; *Sharon* v. *Tucker,* 144 U. S. 533, 541; *Scruggs*

v. *Scruggs,* 43 Mo. 142; *Poignard* v. *Smith,* 6 Pick. 173; *Kennebec* v. *Laborce,* 2 Me. 275; *Waltermeyer* v. *Baughman,* 63 Md. 200; *Beatly* v. *Mason,* 30 Md. 414. Even within the excepted class, twenty years' possession by one of two tenants in common, accompanied with an exclusive appropriation of the rents and profits, acquiesced in by the cotenant, has been held to afford the presumption of a conveyance from the party out of possession (*Doe* v. *Prosser,* Cowp. 217), and the same length of time, coupled with other circumstances, a conveyance or release of an equity of redemption to the mortgagee in possession. 9 Wheat. 490, 497, 498; *Zellar* v. *Eckert,* 4 How. 289, 297.

5. A pertinent question then is, Is there any privity between the widow and the heirs, the facts being that her dower was never assigned in this property? Widow's dower is not an estate before assignment. *Wilkes* v. *Wilkes,* 18 App. D. C. 90; *Blodgett* v. *Brant,* 3 Cranch C. C. 394; *Brown* v. *Adams,* 2 Whart. 188; *Railroad Co.* v. *Taylor,* 6 App. D. C. 259; *Hilleary* v. *Hilleary,* 26 Md. 274. Her possession is not in subordination to the rights of the heirs. *Hogan* v. *Kurtz, supra,* bill of exceptions to general term sustained by S. C. U. S. The heirs may maintain ejectment against the widow without assigning dower. *Hilleary* v. *Hilleary,* 26 Md. 274; Park, Dower, 334; 4 Kent, Com. 61; 1 Washb. Real Prop. 252, §§ 2 and 253; *Shaefe* v. *O'Neil,* 9 Mass. 13; *Evans* v. *Webb,* 1 Yeates, 424; *Jackson* v. *O'Donaghy,* 7 Johns. 247; *Corey* v. *People,* 45 Barb. 262; *Hildreth* v. *Thompson,* 16 Mass. 191. The only exception, it is believed, is that made by this court in *Wilkes* v. *Wilkes,* 18 App. D. C. 90, which holds that, where there is only one piece of property from which dower can be assigned, and the widow is in possession of that, the heirs cannot maintain ejectment until after dower assigned. She is not a tenant in common. *Brown* v. *Adams,* 2 Whart. 188. She cannot bargain and sell her dower. *Jackson* v. *Aspell,* 20 Johns. 412; *Jackson* v. *Vanderheyden,* 17 Johns. 168; *Jack* v. *Dyer,* 31 Ark. 334, 336; *Miller* v. *Woodman,* 14 Ohio, 520.

6. Alexander Tait took possession in 1857 under a deed from Mary M. Stuart. She had no title, and the only effect of this

deed would be to give color of title, which must be followed by actual possession for the statutory period. He was in possession for only thirteen years; the period required by the statute had not run, and he had no estate and could not have defended an action by the heirs of Donald Stuart, the record owner. *Keefe* v. *Bramhall,* 3 Mackey, 551.

7. If *actual possession* had been continued by his heirs long enough to complete the requisite period of twenty years, his and their possession together would have been a sufficient bar, but it is shown by the testimony and admitted by the stipulation of counsel of November 14, 1902, that the heirs of Alexander Tait *have never been in possession* of said property. For them to complete the adverse possession of Alexander Tait they must have been in *actual possession* for at least seven years. They were never in possession at all. Her possession was not in subordination to their rights, and could not complete for them their period of *actual possession. Reid* v. *Anderson,* 13 App. D. C. 30; *Boswell* v. *De La Lanza,* 20 How. 29, 32. Her possession, was, therefore, a new disseisin. The husband and ancestor was a mere trespasser of thirteen years' standing, at least seven years short of the period which by the statute tolled the right of entry by the heirs of Donald Stuart. In such a case the widow has no dower, the heirs take no estate of inheritance, not even the right of possession as against the heirs of Donald Stuart. There was no privity of estate, for there was no estate. The widow had no benefit from her husband's possession of thirteen years, as only those in privity with him could continue his adverse possession, and the heirs had no benefit, as they did not continue in possession. *Keefe* v. *Bramhall,* 3 Mackey, 551. Her possession worked a disseisin as to the heirs of Donald Stuart. *Hilleary* v. *Hilleary,* 26 Md. 274. The lower court based its opinion on the case of *Wilkes* v. *Wilkes,* 18 App. D. C. 90. In that case this court held that where, on the death of the husband, contrary to the facts in the present case, there was *only one piece of property* in which the widow's dower could be assigned, and she remained in possession of that, the heirs could not maintain ejectment against her until they had assigned dower.

*This decision of this court does not change the character of her holding. It does not give her an estate such as is given by statute in some States; but, on the contrary, it expressly holds that she has no estate* (p. 99). The doctrine laid down in *Wilkes* v. *Wilkes* has, therefore, no application to the case at bar, because: First, the widow was *not* in possession of the *only* piece of property in which her dower could be assigned; second, the bar of the statute cannot be postponed by the failure of the heirs to assign dower, as was their duty; third, the statute begins to run from the time when they might have perfected their right, irrespective of the time they actually perfected it, or whether they ever did so. *Bauserman* v. *Blunt*, 147 U. S. 647, 657; *Richards* v. *Maryland Ins. Co.* 8 Cranch, 84; *Braum* v. *Sauerwein*, 10 Wall. 218; *United States* v. *Wiley*, 11 Wall. 508, 513, 514; *Kirby* v. *Railroad*, 120 U. S. 130, 140; *Amy* v. *Watertown*, 130 U. S. 320, 325. The above cases are conclusive that the running of the statute of limitations was not postponed, in the case at bar, for the reason that the heirs "might have perfected their rights" by "availing themselves of the means within their power to prosecute or preserve their claim;" that is, by assigning dower, or causing it to be assigned. It was the duty of the heirs, immediately on the death of the ancestor, to assign dower. As soon as dower was assigned, they might have maintained ejectment against the widow. The fact that they have failed to perform their duty and to perfect their rights for thirty years cannot postpone the running of the statute, and the title of this complainant must be good as against them. The judge below erred in holding that the case of *Wilkes* v. *Wilkes* places a widow in the District of Columbia with dower unassigned in the same situation as a widow in Missouri, under the statutes of that State, giving her the right to possession until dower assigned; for the decisions of the Missouri courts are that the widow's right before assignment is virtually a life estate, subject to be defeated by assignment of dower. The Missouri courts hold that before assignment: (*a*) She can sell and transfer her right to dower to another, which transfer carries with it all the incidents belonging to her right prior to its transfer.

*Stokes* v. *McAllister,* 2 Mo. 163; *Kane* v. *McCowan,* 55 Mo. 181; *Jones* v. *Manley,* 58 Mo. 559. She cannot transfer her right at common law (*Jackson* v. *Aspell,* 20 Johns. 412; *Jackson* v. *Vanderheyden,* 17 Johns. 168; *Jack* v. *Dyer,* 31 Ark. 334, 336; *Miller* v. *Woodman,* 14 Ohio, 520), because it is not an estate. *Wilkes* v. *Wilkes,* 18 App. D. C. 99. (*b*) In Missouri she may maintain ejectment for the mansion house before assignment of dower. *Stokes* v. *McAllister,* 2 Mo. 163; *Roberts* v. *Nelson,* 86 Mo. 25. At common law she cannot maintain ejectment before assignment. *Doe* v. *Nutt,* 2 Car. & P. 430. In fact, in this jurisdiction, dower before assignment has none of the incidents of an estate, and *Wilkes* v. *Wilkes* gives no support to a claim that the widow, here, has any such rights as the courts of Missouri say their statutes give her.

*Mr. Thomas M. Fields* and *Mr. Irving Williamson,* for the appellees:

A title by adverse possession cannot be acquired by the widow's continued occupancy for twenty years of the mansion or dwelling house after the death of the husband (no dower having been assigned), under claim of ownership, as against the heirs of the husband, who had no notice of such adverse claim. *Wilkes* v. *Wilkes,* 18 App. D. C. 90; *Kirk* v. *Smith,* 9 Wheat. 241, 288; *Zeller* v. *Eckert,* 4 How. 289; *Fischer* v. *Siekman,* 125 Mo. 165; *Foy* v. *Wilborn,* 20 So. 604.

Mr. Justice MORRIS delivered the opinion of the Court:

1. With reference to the heirs and representatives of Donald Stuart, there can be no question whatever as to their being barred by the statute of limitations from maintaining any claim to the property in controversy; and as to them the complainant in the bill would undoubtedly be entitled to the relief which she seeks. Their claim is wholly unnoticed in the opinion rendered by the learned justice who heard the cause in the court below; and it has been ignored in the argument before us. There is no

pretense of privity of estate between them and the complainant which would prevent or postpone in any way the operation of the statute. But, of course, notwithstanding this, the complainant would not be entitled to a decree vesting title in her, if she cannot prevail against the heirs of Alexander Tait. So the real issue in the case is between the complainant and the heirs of Tait.

2. The contention on behalf of the heirs of Alexander Tait, or of such of them as contest the complainant's right,—for, as has been stated, some of them admit her right,—is that Alexander Tait was the owner of the property during his lifetime; that his widow was entitled to a dower interest in it; that her entry upon the property, or the beginning of her separate occupation of it, which amounts to the same thing, was as such widow in aid of her right of dower; that her possession was not hostile or adverse to the right of the heirs, but in subordination to it; that it could not have become hostile without disclaimer of their right and notice to them of such disclaimer, and that there never was any such notice given to them. And the cases of *Wilkes* v. *Wilkes,* 18 App. D. C. 90, and *Zeller* v. *Eckert,* 4 How. 289, 11 L. ed. 979, are mainly relied on in support of the contention.

But the weakness of this contention lies in the fact that the foundation for it is wholly wanting. According to the record before us, Alexander Tait never was the owner of the property in question in the sense that he had any right or title to it which resulted in dower for his widow. If there were any underlying equities here in his favor they are not apparent. So far as the record discloses, he was simply a trespasser upon the property during the whole time of his occupancy, and the record title and true ownership during all that time were vested in the heirs of Donald Stuart. Nor was his occupancy of sufficient duration to give him a title by adverse possession. He had no better title at the time of his death than he had when he entered upon the property. He had color and claim of title, it is true, but these avail him nothing in the absence of a sufficiently long-continued

occupancy to make his possession the foundation of a possessory title by the statute of limitations.

Some expressions in the pleadings and testimony in the case are availed of to show admissions by the parties to the effect that Alexander Tait was the owner of the property during his lifetime. For example, it is alleged in the bill of complaint that the complainant, Victoria H. Hough, *"and those under whom she claims, have for the last thirty years been the owners"* of the property; and in the answers of some of the defendants it is averred that Alexander .Tait was *"lawfully possessed"* of the property at the time of his death. And the stipulation between counsel, which has been mentioned, is cited as an admission of Tait's ownership, where it says *"that at the time of the death of Alexander Tait the only improved property which he owned was the property involved in this suit."* But it is very clear that these expressions are not to be taken as meaning that Alexander Tait was at any time the owner of this property by a good and valid legal title. In the bill of complaint it is alleged that the record title remained in Donald Stuart and his heirs or representatives, and that consequently there never was any title in Alexander Tait; and this is admitted by the answers, and is confessedly admitted all through the record. We are informed that there was an abstract of title introduced in evidence in the case, although it has not been incorporated into the printed record before us, which shows conclusively that Alexander Tait never acquired the legal title to the property. Loose expressions, used in a popular sense, cannot be allowed to contravene the undoubted tenor of the record evidence. Properly understood, they are not inconsistent with the record.

Now, then, if Alexander Tait never had legal title, or legal scisin, of this property, it is undoubtedly the law that his widow had no right of dower in it. There could not well be right of dower in that of which the heirs of Donald Stuart could have lawfully repossessed themselves on the death of Alexander Tait and ousted both his widow and his heirs. There can be no right of dower where there is no estate.

It is very true that, under the law governing adverse posses-

sion, if the heirs of Alexander Tait had entered upon this property immediately upon his death, and had continued their occupation of it for a time sufficient in connection with the time of his occupation to complete the period of limitation which ripens adverse possession into a title, the title so accruing at the end of the period of limitation, or rather the estate which would then become vested, would be subject to rights of dower; but it would be *to* rights of dower accruing thereafter. It could scarcely be claimed that the original complainant in this case, if she had let the heirs of her husband into possession upon his death, and they had in due course of time thereafter secured a title by adverse possession, could then have returned and claimed dower in the property. A widow's dower must accrue, if it accrues at all, immediately upon the death of her husband.

If, therefore, Alexander Tait had no estate in this property, and in contemplation of law was no more than a mere trespasser under color and claim of title, and if his widow had no right of dower in the property, her entry upon it after his death, or her continued occupancy of it, could not be tacked to his occupancy so as to give her any title. She became an independent trespasser. *Sawyer* v. *Kendall,* 10 Cush. 241; *McEntire* v. *Brown,* 28 Ind. 347. And her adverse possession must be dated from the time of her husband's death. In her occupation there could be no privity of estate between her and the heirs of her husband; and consequently there is no requirement that she should have given them any notice of her claim to the property and of her holding of it as her own. The argument, therefore, must necessarily fail which is based upon the theory that she must be held to have entered upon the property under her right to claim dower in it, and that, until she disclaimed the right of the heirs in the premises and gave them notice of the disclaimer, she could initiate no valid adverse possession.

As the decree appealed from is based upon the assumption, for which we find no warrant in the record, that Alexander Tait had an estate of inheritance in the property in controversy, which upon his death was subject to a right of dower in his widow, we are compelled to conclude that there was error in it. It will

therefore be reversed, with costs; and the cause will be remanded to the supreme court of the District, with directions to vacate that decree, and to enter a decree in favor of the complainant in accordance with the prayers of her bill.

And it is so ordered.                                    *Reversed.*